THE PEOPLE *v.* THE ALBANY AND VERMONT RAILROAD COMPANY.

A railroad corporation which has completed its road' between the termini named in its charter or articles, forfeits its franchise by abandoning or ceasing to operate a part of the route.

*It seems* that the corporation owes a duty to the public to exercise the franchise granted to it, and that it cannot abandon a portion of its road and incur a forfeiture at its mere pleasure. *Per* DENIO, SUTHERLAND, ALLEN, and SMITH, Js.

The remedy, however, is not an action in equity, on behalf of the public, to enforce a specific performance, but by mandamus or indictment or, at the election of the State, by proceeding to annul the corporation.

APPEAL from the Supreme Court. A corporation, under the name of the Albany Northern Railroad Company, was formed, in 1851, pursuant to the provisions of the general railroad act, for the purpose of constructing, maintaining and operating a railroad between the city of Albany and Eagle Bridge, in the county of Rensselaer. The road was constructed, and put in operation in 1853, and continued to be run until September, 1859. The Company, in 1852, had given a mortgage upon all its property and franchises, which was foreclosed and the mortgaged property sold on the 15th September, 1859. The purchaser at such sale, and his associates, on the 6th October, 1859, organized a new corporation, under the name of the Albany and Vermont Railroad Company (the

defendant), for the purpose of maintaining and operating the purchased road; and in the articles of association it was stated that the road of the new Company was that " originally owned, constructed, maintained and operated by the Albany Northern Railroad Company, running from the city of Albany to Eagle Bridge, in the county of· Rensselaer, from and to which places the same is to be maintained and operated." For fifteen days after its organization, the defendant operated its railroad from Albany to Eagle Bridge, and then wholly ceased to operate that part of the same lying between Waterford Junction and Eagle Bridge (about twenty-one miles of the entire route), but has continued to operate the part between Albany and Waterford Junction. In September, 1860, with the view of wholly abandoning the operation of that part of its road, the defendant took up and removed all the iron rail thereon between Waterford and Eagle Bridge, and between those points so dismantled the structure as to render it wholly unfit for use and travel for railroad purposes. The defendant being engaged in removing, with a view to abandonment, the iron track and fixtures used in the operation of its road east of the Waterford Junction, this action was commenced by the Attorney-General. The complaint prayed that an injunction might be granted, restraining the selling, taking up or removing of the iron track and fixtures of said road, and demanded, as relief, that the defendant be required to reöpen and operate, for public use, that part of its railroad from Waterford Junction to Eagle Bridge, and specifically perform all the duties and obligations resting by law upon it as a railroad corporation.

The trial was before a referee, who dismissed the complaint. Upon appeal judgment, entered on his direction, was affirmed at general term, in the third district, and the plaintiff appealed to this court.

*John H. Reynolds,* for the appellant.

*John B. Gale and William A. Beach,* for the respondent.

WRIGHT, J. The defendant has voluntarily abandoned all of its road east of the Waterford Junction, whilst it is continuing the operation of that part between Albany and Waterford, in connection with the Rensselaer and Saratoga Railroad. It is exercising its corporate rights and privileges, and the franchise granted by the State to maintain and operate a railroad between Albany and Eagle Bridge, in the operation of one between Albany and Waterford Junction, without any assent by the legislature to the abandonment of any part of its road, or any legislative modification of the franchise granted to it. This cannot be legally done. It is the exercise of a franchise or privilege not conferred upon the defendant by law. But it is not the precise question now presented. The present question is, whether a railroad corporation, formed under the general act, for constructing, maintaining and operating a railroad upon a definite route and between places specified in its articles of association, may be compelled by a court of equity, in an action brought by the State, after it has constructed its road, to continue to maintain and operate it. Of course, it is not pretended that such an action can be maintained, or the power exercised by the courts, unless the obligation, or duty, is imposed by law on the corporation to maintain and operate its road for the public use and benefit.

The inquiry primarily suggested is, whether there be any express legal obligation or duty, or any to be necessarily implied, resting on a railroad corporation, to maintain and operate its road for the public use, irrespective of its own interests. If any such obligation or duty is imposed, it is by the general law under which the corporation is created, or to be implied from its provisions, or those of the charter of the company. The railroad act does not, in terms, require a company organized under it to construct, maintain or operate the railway mentioned in its articles of association. The act is permissive, and not mandatory. The associates are endowed with corporate existence, and, as a corporation, vested with powers to construct and operate a railroad for the conveyance of persons and property between established points, and, in this sense, to

exercise a public employment. The associates, by the act of acquiring corporate existence, do not absolutely agree with the State that, in consideration of such corporate existence, and the franchise with which they are invested, that they will construct the railroad mentioned in the charter, and continue to operate it during their corporate existence. No contract obligation is thereby created on the part of the corporation. This is apparent from the act itself. The corporation is first brought into existence, and powers conferred on it for the execution of a special purpose, viz., to construct, maintain and operate a railroad for the conveyance of persons and property. There is no absolute requirement, or obligation assumed, by the corporation created under the act, to execute the purpose. Indeed, the law itself contemplates that there may be an omission or neglect to carry out the object of the association, and a non-user of the corporate privileges. Unless the corporation begins to construct its road, and expend ten per cent of its capital in such construction, within two years after its articles of association are filed, or finish the road and put it in operation in five years from the time of filing such articles, its corporate existence and powers are to cease. (Laws of 1850, ch. 140, § 47.) The penalty for the non-user of the corporate rights and privileges for five years, is a forfeiture of such rights and privileges. It is optional with the corporation whether it will exercise the powers bestowed, or undertake the work; and, being so, the grant and acceptance of the railroad franchise cannot properly be construed as a contract between the State and corporation, binding the latter to construct and maintain the railroad for the public benefit. It is only from the charter and its acceptance that any contract relation between the State and the corporation can arise; and such contract must be operative, if at all, the moment the charter is accepted. The provisions of the railroad act negative the idea that any contract relation between the State and the corporation formed under it springs out of the grant and acceptance of the franchise. There is, therefore, no contract obligation resting on a corporation, brought into existence by the railroad act, in favor of the State or interested

citizens, to construct, maintain and operate, for the public convenience and use, the road named in its articles of association. But is the duty specially declared, or necessarily to be implied from the provisions of the railroad act? There is no such duty specially declared. There are no express words of the act requiring the corporation created under it to make and maintain the roadway. Had there been, there would probably have been but few corporations formed under it. Nor do I think the duty can be clearly collected from the general purview of the whole statute. To promote the construction and maintenance of railroads to be publicly used in the conveyance of persons and property, is undoubtedly a purpose of the law. It invites capitalists into this field of enterprise, not as public servants, charged with a public duty, but as private corporators, whose privileges are to be exercised, if at all, under limitations and restrictions, looking to the benefit of travelers and patrons of the work. The legislature, in effect, say, as the proposed road is to be of public utility, we empower you to build and·operate it, and to that end confer on you corporate existence and the power to act in a corporate capacity, and also the further power to take lands for corporate use, *in invitum.* The corporation is essentially a private one. If it constructs and operates the road, it is to do it under the limitations and restrictions imposed by the law. It may never, however, enter upon the construction of the proposed road. Insurmountable obstacles may intervene to the prosecution of the work. The law seems to contemplate such a state of things; and provides that, in the event of non-user of the corporate privileges, or a non-completion of the road within a limited period, such corporate privileges shall cease. These provisions are inconsistent with the idea that the duty is assumed by the company to construct the proposed road from having obtained a charter for that purpose, or that it is within the scope or intention of the act to absolutely impose, for public benefit, such duty on the corporators. Permission is given to make the road, and the law leaves the question of the exercise of its powers to the option of the company. This would not have

been so, if the legislature had intended to require the construction and operation of the proposed road for any period whatever. For anything of an obligatory character in the act, the associates, after corporate organization, may proceed to construct the projected road, or they may omit or neglect to do it and forfeit their corporate privileges. This option existing, it negatives the notion that any duty is imposed to build the road. And if no duty is imposed to construct, it must follow that there is none to maintain and operate the road after construction. Such duty cannot be created by the act of the corporation itself. There is nothing in the railroad act, nor power anywhere, to prevent a railroad corporation from abandoning its road and forfeiting its corporate privileges by non-user, if it chooses to do so. Neither by the provisions of the statute, nor otherwise, is it under any legal obligation, or owes any duty to the State or the public, to maintain and operate its road for an instant of time after its own interests shall cease to be subserved thereby.

If, then, there be no legal obligation or duty, springing out of the grant and acceptance of a railroad franchise, or imposed by the railroad act, resting on the corporation to maintain and operate its road for public use, the state cannot maintain an action or a court of equity compel its maintenance and operation. The obligation or duty in favor of the State or the public must exist, or it cannot be enforced. It is only upon the theory of an existing obligatory contract between the State, and the corporation, binding the latter to maintain and operate the railroad for the use of the public, or that such duty is imposed by law, that the State can interfere by action, or the courts compel a specific performance. Indeed, if the duty be merely enjoined by the railroad act, I cannot well see how it can be enforced by action. The railroad franchise is granted upon condition, that the corporation will construct and operate the railroad named in its articles of association. Grants upon condition, without express covenant, are never the subject of an action for specific performance. The right is forfeited, and the redress is by reclaiming it. Besides, were the breach is of

a mere statute duty, an action is not the appropriate remedy. It has been held, that when the duty to build a railroad was imperative by the act authorizing it, that it could not be enforced by injunction, at the suit of the Attorney-General. (*Attorney-General* v. *Birmingham R. R.*, 7 Eng. L. & Eq. R., 283.) There are various duties charged upon companies by the railroad act, such as maintaining fences or farm-crossings. In such cases, an action by the Attorney-General for specific performance would be without a precedent. The only admissible remedies, it seems to me, for a breach of the duties charged on corporations by the railroad act, are mandamus, or quo warranto, or indictment.

I am of the opinion, that a railroad corporation, organized under the general act, cannot be compelled at the suit of the Attorney-General to reöpen and operate a road that it has abandoned, and that if such corporation chooses to abandon its works, and no longer assert the corporate rights and privileges conferred on it by its charter, the remedy of the State is not by action for specific performance. The only remedy where there has been a total abandonment, and a non-user of the corporate powers, is an action by the people to vacate the charter or annul the existence of the corporation, and a like remedy is applicable, when the corporation shall abandon part of its road, and continue to operate the remainder under its corporate franchise. A company endowed with a franchise or privilege to maintain and operate a railroad on a fixed route, and between places named in its charter, cannot exercise the franchise or privilege in the operation of a road upon another route, and between other places. The franchise can only be legally exercised, by the corporation operating its entire road. There is no privilege granted or right obtained to operate a part thereof, and if it should undertake to do so, it is exercising a franchise or privilege, without legal sanction. An action is authorized by statute to be brought by the Attorney-General, in the name of the people of the State, on leave granted by the Supreme Court or a judge thereof, to vacate the charter or annul the existence of a corporation, whenever such corpo-

ration shall exercise a franchise or privilege not conferred upon it by law. (Code, § 430.)

In the present case the defendant being endowed with the franchise or privilege of maintaining and operating a railroad between Albany and Eagle Bridge, has voluntarily abandoned the maintenance and operation of so much of its road as lies between the Waterford Junction and Eagle Bridge, whilst it is continuing to exercise its franchise and corporate rights and privileges in operating a railroad between Albany and Waterford Junction. The State cannot compel the corporation to reöpen and operate the abandoned road. It cannot insist that the company shall exercise the rights and privileges conferred on it. If the company chooses not to use them, there is no power to compel their use. But the defendant, under a franchise or privilege granted to it to maintain and operate a railroad between Albany and Eagle Bridge, cannot legally operate one between Albany and Waterford Junction. It is the exercise of a franchise or privilege not conferred on it by law. Its charter may be vacated, or its corporate existence annulled; but because it is doing something not legally sanctioned, is no ground for constraining it to do what neither any contract, obligation nor the law requires of it.

I think the complaint in this case was properly dismissed at the special term. The people cannot maintain an action to compel a railroad company to operate its road for the use of the public after it shall have abandoned it for reasons peculiar to itself. Whilst the corporation exercises the franchise, it must do it under the limitations and restrictions imposed by its charter or by law. It may omit to use its franchise or privileges, or abuse its powers or exercise privileges not conferred on it by law, and thereby forfeit its charter or its corporate existence be annulled. Any remedy which the public may have for a breach or neglect of duty imposed by the railroad act, must be by mandamus, quo warranto, or indictment; and the performance of such duty cannot be specifically enforced in equity at the suit of the Attorney-General.

The judgment of the Supreme Court should be affirmed.

All the judges except SELDEN, Ch. J., and GOULD, J., who did not sit in the case, concurred in this conclusion. DENIO, SUTHERLAND, ALLEN, and SMITH, Js., however, were of the opinion that a corporation is under a legal obligation to exercise its franchises, and that it has not the option to discontinue a part of its road and forfeit its franchises. They agreed that the remedy is not by action in equity for a specific performance but by mandamus or indictment, or at the election of the people by proceeding to annul the existence of the corporation.

Judgment affirmed.