## SUPREME COURT.

WILLIAM H. DYCKMAN, appellant agt. JOSE VALIENTE, and others, respondents.

Where several individuals subscribed for the stock of a *steamship company*, which, as alleged, never became legally organized, and the money paid in was all used to build a ship which was intended to be run for the benefit of the company; and where a majority of the subscribers organized a new steamship company, and registered the ship as belonging to it; and the latter company sold the ship and retained the proceeds,

*Held*, that the plaintiff, who was a subscriber to the *original* company, but was not included in the new company, was entitled as a stockholder, or at least as a partner, to an *accounting for the proceeds of the vessel*, from those of his fellow subscribers who had participated in its sale.

*New York General Term, November,* 1864.

*Before* LEONARD, *P. J.;* BARNARD *and* SUTHERLAND, *Justices.*

APPEAL by the plaintiff from a judgment at special term dismissing his complaint.

         HENRY A. CRAM, *for the appellant.*

         I. T. WILLIAMS, *for the respondents.*

By the court, SUTHERLAND, J. After a careful examination of this case, I cannot avoid thinking that the pleadings were drawn and that the action was tried without any very definite idea of the ground or principle upon which the plaintiff had or claimed to have, a right to equitable relief. I am inclined to think that when the plaintiff rested, and the defendants moved to dismiss his complaint, he had presented on the pleadings and proofs a *prima facie* case for equitable relief, and it is very plain to me that his complaint should not have been dismissed on the ground it was

dismissed, which ground, as I read the case, was substantially that the property in the ship was in the parties as tenants in common ; that no conversion or destruction of the ship having been proved, no action would lie by the plaintiff against his co-owners ; that no act had been alleged or proved which entitled the plaintiff to equitable relief as a tenant in common. Now, in my opinion, there was no question of tenancy in common, or of joint tenancy, in the case.

As between Boardman, Holbrook & Co., as contractors for the building of the ship, and the plaintiff as the party with whom they made the contract, and as between them as such contractors and the first corporation, " The New York and St. Jago Steamship Company," no doubt the property in the ship was in Boardman, Holbrook & Co., until her delivery by them under the contract (*Andrews* agt. *Durant*, 1 *Kernan*, 35) ; but as between the plaintiff and such of the defendants as were officers or stockholders of the first corporation, " The New York and St. Jago Steamship Company," as between the plaintiff and such of the defendants as took or acquired their stock or interest in the second corporation, " The Cuba and New York Steamship Company," with notice or knowledge of the plaintiff's interest or rights in the first corporation, or of his rights as between him and the first corporation, or the stock subscribers of the first corporation, I think the property in the ship was in the first corporation. In looking at the case made by the pleadings and by the proofs, when the plaintiff rested and his complaint was dismissed, to see whether he was entitled to the equitable relief specifically asked for, or other equitable relief, as against all or any of the defendants, I think the property in the ship should be considered to be in the first corporation. I think the Judge at special term, on the pleadings and proofs, for all the purposes of the action, should have considered the title

or ownership of the ship to be in the first corporation, and to have been from the time of its organization.

I do not see why the first corporation was not regularly organized under the act. At all events, it appears to me that such of the defendants as participated in its organization, or subscribed for its stock, ought not to be permitted to allege any irregularity in its organization to defeat the plaintiff's equity. I think the question of equitable relief of any kind, and as to any of the defendants, was between the plaintiff either as a stockholder or creditor of the first corporation and such defendants. If so, the question of tenancy in common, or of joint tenancy, or of part ownership was not in the case, for a stockholder as such, cannot properly be said to have the interest of a tenant in common, or joint tenant, or of a part owner in the property, real or personal, the capital or capital stock is invested in during the life time of the corporation. If the plaintiff's position was that of a stockholder of the first corporation, or he had a right to be regarded as claiming relief as such, the opinions at general term and special term, in *Abbott* agt. *The American Hard Rubber Company* (33 *Barb.* 580), and the cases referred to in the opinions, will sufficiently illustrate the equitable ground or principle on which I suppose he was on the pleadings and proofs entitled to equitable relief, at least as against those of the defendants who were officers or stockholders of the first corporation, and who participated in the acts charged in the complaint, and the necessary effect of which was the destruction of his rights as such stockholder (*see also The People* agt. *The Albany and Vt. Railroad Co.* 24 *N. Y. R.* 261, *and memorandum of the reporter at the end of the case*).

I think that at all events, as to such defendants, the plaintiff was a stockholder in the first corporation, and had a right to be regarded as a stockholder to the amount of $3,250, and probably to the whole amount claimed, particularly considering Baralt's letter from Cuba, the mortgage

by De Mier, the organization of the second corporation without consulting the plaintiff, the repudiation by the answers of any right of the plaintiff in the second corporation as a stockholder or otherwise, the registry of the ship (the only property of the first corporation) in the name of the second corporation, the offers by the plaintiff to show that subscribers to stock in the first corporation other than himself were in arrears, and his offer to show that the ship had been sold to the United States government by Baralt and his confederates, and the proceeds of the sale ($200,000) divided between De Mier, Boardman, Holbrook & Co., and Baralt. I think the evidence offered to show that others of the subscribers to the first corporation (who are all defendants in this action), were in arrears as to their subscriptions for stock in the first corporation should have been received, as it would have tended to show that they ought not to take the position in this action that the plaintiff was not a stockholder in the first corporation, but was to be considered a mere creditor of that corporation, because he had not paid up his stock in full. I think, too, the proof as to the sale of the ship to the United States was proper, and should have been received, even if it was not necessary to show what relief and the extent of the relief which should be granted.

The very ground upon which the complaint was dismissed, may be said to assume that the plaintiff was or should be regarded as a stockholder in the first corporation; for he could not be a tenant in common without having an interest in the ship, and it was not pretended, and there was not a pretense for pretending that the plaintiff had any interest in the ship, except what came from his subscription for stock in the first corporation, and the payments he had made. Even if the plaintiff was to be regarded as a mere creditor of the first corporation, I am by no means prepared to say that his complaint could have been rightfully dismissed. The defendants, or some of

them, had got the only property of that corporation, or had put it in a position that he could not reach it at law. I think the case shows that this had been done in a way or by acts which must be deemed fraudulent to the plaintiff, even regarding him as a mere creditor of the first corporation. Nothing was left of the first corporation but its corporate name. A judgment and execution against it would have been fruitless. Possibly under the provisions of the act under which the corporation was organized, the plaintiff as a creditor of it might have maintained an action against one or more of the defendants as subscribers for stock in the first corporation, after judgment and execution against the corporation, but considering that none of the defendants demurred, but all answered, and that the question as to the plaintiff's right to relief as a creditor is prevented by the dismissal of his complaint, I do not think that it can be said that his complaint could have been rightfully dismissed, even regarding him as a mere creditor of the first corporation.

A court of equity has jurisdiction in all cases of fraud. In some cases of fraud courts of law have concurrent jurisdiction, and in many cases of fraud, it has been the practice or usage of courts of equity to decline to exercise their jurisdiction, but leave them exclusively to courts of law, but even in such cases it cannot be said that courts of equity have not jurisdiction. I am inclined to think that in the principal case, regarding the plaintiff as a mere creditor of the first corporation, the special term could not properly have declined to exercise its jurisdiction on the ground that plaintiff had a remedy at law, or had not exhausted his remedy at law.

My conclusion is that the judgment of the special term should be reversed, and that there should be a new trial, with costs to abide the event of the action.

LEONARD, J.   The steamship was conveyed by taking out a register in the name of the Cuba and New York Steam-

ship Company, as owner, through the action of some or all of the other defendants, wrongfully, and in disregard of the rights of the plaintiff. Simonson did not in fact build the ship for that company, and in giving the builder's certificate, which entitled that company to take out a register, he but followed the directions of certain of the defendants whom he supposed authorized to direct him in respect to the vesting of the title to the ship, or obtaining the usual *indicia* of title. It was nevertheless the act of those who procured, directed or controlled the use or application of that certificate and the affidavit of Dr. Mier. Up to that time the moneys of the plaintiff, and of the individual defendants except Mier, had been used in constructing this steamship, and they who so advanced their money, were copartners in the adventure.

The act of causing the steamship to be vested in the Cuba and New York Steamship Company, or in excluding the plaintiff from his interest in her, was a conversion of the partnership property by some of the partners, in which all of them who have participated in the divisions of the funds or the proceeds of the sale, must be held to be bound either as actors or by ratification of the act. The plaintiff has been excluded from participation. He is entitled to an account as against these partners, or at least he may be so entitled, if the facts and positions above stated are finally borne out by the proofs on both sides, at the close of the case.

I am satisfied that the complaint was incorrectly dismissed, and that the plaintiff was then entitled *prima facie* to an account as against his partners, of the value of the partnership property converted by them, from which he was excluded.

The New York and St. Jago Steamship Company never went into operation, and seems to have but little to do with the case except as showing the intention originally, of those who were active in promoting the enterprise, and

who conducted the operations of those who contributed to the adventure. This company never had any title or interest in the property created by the money of the individual contributors. The stock subscribed for was never paid in as capital. The money raised was paid out directly for construction, and not for shares subscribed for in the New York and St. Jago Steamship Company. The ship was built by individuals, not by a corporation. There was no person elected as president, or to any other office, and never a dollar of capital paid in, so far as it appears·by the evidence. Proof of the amount in which the subscribers to the stock of the New York and St. Jago Steamship Company, other than the plaintiff, were in arrears in their payments, was not material, and the evidence offered on this point was correctly excluded. The offer to prove the sale of the ship to the United States government, and the price received, was wholly immaterial, except as the appropriation of the proceeds might be shown, for the purpose of establishing the participation of the defendants, who were partners in constructing the ship, in the proceeds of the sale, and thus showing their ratification of the proceeding whereby the plaintiff was excluded from the partnership property to which he had contributed.

The judgment should be reversed and a new trial ordered, with costs to abide the event.