*In re* Application of ATTORNEY GENERAL.

(*Supreme Court, Special Term, Ulster County.* August, 1888.)

RAILROAD COMPANIES—ACTION TO VACATE CHARTER—LEAVE TO SUE.

Where a railroad company purchases at foreclosure sale the property and franchises of another company, whose road-bed is not finished, reorganizes under Laws N. Y. 1874, c. 430, which provide that such reorganization "shall become and be vested with * * * all the rights, privileges, and franchises" belonging to the corporation owning the property so sold, "and shall be subject to all the provisions, duties, and liabilities imposed by the general railroad act and its amendments, except so far as * * * inconsistent herewith, and with the last-named rights, privileges, or franchises," and fails to complete the railroad within the time limited by the general railroad act and amendments, under which the corporation owning the property was organized, the attorney general will be allowed to bring an action to vacate its charter, under Code Civil Proc. N. Y. § 1798 *et seq.*

*E. Countryman*, for petitioner. *John E. Burrill* and *John J. Levison*, for Ulster & Delaware Railroad Company.

PARKER, J. This is an application by the attorney general, pursuant to section 1798 *et seq.*, of the Code of Civil Procedure, for leave to bring an action against the Ulster & Delaware Railroad Company, for the purpose of vacating the charter of said company, and perpetually enjoining it from the exercise of any of its corporate rights, etc., because, as is alleged, it has failed to discharge the duty and liability imposed by the general railroad act of 1850, and the several acts amendatory thereof, which provide, among other things, that if any corporation, formed pursuant to its provisions, shall not finish its road and put it into operation in 10 years from the time of filing its articles of association, its corporate existence and power shall cease. It appears from the petition that in the year 1866 the Rondout & Oswego Railroad Company was organized under the provisions of the act before referred to, and commonly known as the "general railroad law," for the purpose of constructing, maintaining, and operating a railroad from Rondout, Ulster county, to or near the village of Oneonta, in Colliersville, Otsego county, N. Y., a distance of about 85 miles; the line of its road, as authorized by its articles of association, passing through the town of Harpersfield, Delaware county, which town, in the year 1869, was bonded in the amount of $100,000, in aid of the construction of said railroad. The road-bed, property, and franchises of the Rondout & Oswego Railroad Company, the corporate name of which was subsequently changed to the New York, Kingston & Syracuse Railroad Company, was sold in May, 1875, at a mortgage foreclosure sale, and purchased by a committee of the old bondholders, who thereupon executed and filed in the office of the secretary of state the certificate of reorganization re-

quired by chapter 430 of the Laws of 1874. Subsequently, and on May 17, 1875, the property so purchased was conveyed to the Ulster & Delaware Railroad Company. Prior to the sale of the property pursuant to the judgment of foreclosure, the road had been constructed and was in actual operation from one of its *termini*, Rondout, to Stamford, but had not been constructed beyond that point through the town of Harpersfield. The Ulster & Delaware Railroad Company, since it became the owner, in 1875, has operated the road between the same points, Rondout and Stamford, and has not finished and put in operation the road to Oneonta, the line of which passes through the said town of Harpersfield. The residents of this town, through their local officers, alleging—*First*, that it was the duty of the Ulster & Delaware Railroad Company to complete the road within the period of time provided by statute; and *second*, that such period of time has expired,—applied to the attorney general to commence an action for the purpose of dissolving the corporation. The attorney general determined that the facts warranted the commencement of an action. Hence this application to obtain leave of the court for such purpose.

In *People* v. *Railroad Co.*, 24 N. Y. 261, the court say: "A company endowed with a franchise or privilege to maintain and operate a railroad on a fixed route, and between places · named in its charter, cannot exercise the franchise or privilege in the operation of a road upon another route, and between other places. The franchise can only be legally exercised by the corporation operating the entire road. There is no privilege granted, or right obtained, to operate a part thereof; and if it should undertake to do so, it is exercising a franchise or privilege without legal sanction,"—and holds that the proper remedy is an action brought by the attorney general in the name of the people of the state, to vacate the charter, or annul the existence of the delinquent corporation. If the Rondout & Oswego Railroad Company were still the owner of the property and franchises in question, and the action were seasonably brought, it would, beyond question, result in annulling the existence of the corporation. The question involved in this controversy, to-wit, did the Ulster & Delaware Railroad Company, by reason of the sale and reorganization under the Laws of 1874, acquire the property charged with the liability of completing the road, which the law had imposed upon the Rondout & Oswego Railroad Company? has never been passed upon by the courts of this state. Chapter 430 of the Laws of 1874, under which the Ulster & Delaware Railroad Company was organized, contains a provision that the company formed and·the reorganization "shall become and be vested with and entitled to exercise and enjoy all the rights, privileges, and franchises which at the time of the sale belonged to or were vested in the corporation which last owned the property so sold, or its receivers, and shall be subject to all the provisions, duties, and liabilities imposed by the general railroad act and its amendments, except so far as said provisions, duties, and liabilities may be inconsistent herewith, and with the last-named rights, privileges, or franchises. On the part of the railroad company it is argued that, within the rule laid down in certain cited decisions, the franchises, rights, etc., which the company acquired on the sale must be construed as being limited to the franchises necessary for the use and enjoyment of the railroad and property sold and conveyed to the new company, and that the new company only acquired the railroad as completed to Stamford. An examination of the mortgage, judgment of foreclosure, and deed fails to disclose, to my mind, any basis for such an argument. It is further argued that the intendment of the statute is that the purchaser takes the property subject not to the liabilities and penalties and duties which may have been incurred by the old corporation, but subject to such provisions of law as are applicable to all the railroads of the state,—those of a certain class, not those of a single defaulting corporation. The construction thus contended for would enable any railroad corporation to avoid

the penalty imposed for a failure to complete its road by the convenient method of a mortgage foreclosure and reorganization under the act of 1874. On the part of the attorney general it is insisted that the act of 1874 was intended to and does provide a scheme by which the right of the public to have a road completed and operated for the entire distance provided for by the original articles of association is protected; that under its provisions the purchaser at the foreclosure sale becomes invested with all the property, rights, privileges, and franchises of the old corporation, and in turn becomes subject to the penalty which the general railroad act imposes upon all corporations which fail either to complete or operate the railroad its full length. The question presented, to say the least, is of sufficient importance to justify the people in submitting their case to a court from the determination of which a review can be had in the appellate courts. Leave to commence action granted.