The People of the State of New York, Respondent, *v.* The Ulster and Delaware Railroad Company, Appellant.

Upon the trial of an action, brought by the attorney-general in the name of the people, under the Code of Civil Procedure (§ 1798), to enforce the forfeiture of the charter of a corporation, it is incumbent upon the state to show that a cause of forfeiture has not only been incurred by the defendant, but that it continues to exist, that its existence involves some public interest, and that the court has authorized the bringing of the action.

Such an action is always within the control of the state, as the sole party interested, to prosecute or abandon at its will or pleasure, and it may, through its legislature, not only discontinue the action, but waive or abolish causes of forfeiture, declare rights of action and limit the operation of the statute by forbidding the prosecution of such an action in specified cases.

By the amendment in 1889 (Chap. 236, Laws of 1889), of the act of 1874 (Chap. 430, Laws of 1874), providing for "the reorganization of railroads sold under a mortgage," a reorganized railroad corporation no longer incurs the risk of a forfeiture of its charter by a failure to build an extension to its road so as to complete it in accordance with the original plan, after the board of railroad commissioners makes and files a certificate that, in their opinion, the public interests do not require such extension.

The effect of the amendment is to abolish the penalty which the original act imposed, and as there is no clause in the amendatory act saving pending prosecutions, all actions pending at the time of its going into effect, in which judgment had not been rendered, were left subject to the rule created by the amendment, and the certificate is a bar to the action.

In an action so brought, an extra allowance was granted. It was conceded that the only matters involved in the action was the existence of the defendant's corporate franchise, and that the extra allowance must be predicated upon the value of the franchise. The evidence showed that the corporation paid no dividends and no interest on its debt, and that its gross earnings for the previous year were insufficient to pay its operating expenses. The state, however, had imposed a tax upon "the corporate franchise and business" of the company under the act of 1881 (Chap. 361, Laws of 1881). *Held*, that the allowance was erroneous; that the tax imposed furnished no evidence of the actual value of the franchise.

Reported below, 58 Hun, 266.

(Argued June 8, 1891; decided October 6, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made the fourth Tuesday of November, 1890, which affirmed a judgment in favor of defendant entered upon a verdict directed by the court.

Also appeal from order of said General Term, made the fourth Tuesday of November, 1890, which reversed an order of Special Term granting an extra allowance.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. Countryman* for appellant. The new corporation acquired all the property rights, privileges and franchises and assumed all the corporate duties, obligations and liabilities of its predecessors, as imposed by the general law of the state. (*People ex rel. v.*

*Cook*, 110 N. Y. 444; *State* v. *N. P. R. Co.*, 36 Minn. 207; 10 Ohio St. 385; 2 Morawetz on Corp. [2d ed.] § 934; *N. C., etc., R. Co.* v. *C. C. R. Co.*, 83 N. C. 489; *People* v. *O'Brien*, 111 N. Y. 254; *Mayor, etc.*, v. *T. T. S. R. Co.*, 113 id. 311; 92 U. S. 677; 94 id. 718; 117 id. 140; 75 Ill. 524; 68 id. 489; 45 Conn. 199; 96 U. S. 509; Laws of 1867, chap. 715, § 1; *In re B., etc., R. Co.*, 72 N. Y. 246; 75 id. 335; *In re K. E. R. Co.*, 105 id. 98, 115–122; *Day Case*, 107 id. 129, 139; *Beardsley* v. *Johnson*, 121 id. 225; *In re N. P. M. Co.*, 33 N. Y. S. R. 453; *In re B. E. R. Co.*, 32 id. 1065, 1066; 35 id. 451; *N. Y. C. Co.* v. *Mayor, etc.*, 104 N. Y. 33, 43.) The new company accepted the franchises and their correlative duties and obligations, if a formal acceptance be necessary, as affirmatively appears in the certificate of incorporation. But no express acceptance was necessary. "A corporation is under a legal obligation to exercise its francises, and it has not the option to discontinue a part of its road and forfeit its franchises." (*People* v. *A. & V. R. Co.*, 24 N. Y. 261, 269; *People* v. *K., etc., Co.*, 23 Wend. 193; *People* v. *F., etc., Co.*, 27 Barb. 446; *State* v. *C. I. R. Co.*, 71 Iowa, 410; *Smith* v. *People*, 47 N. Y. 330; *Moore Case*, 108 id. 98, 104; *People* v. *A., etc., R. Co.*, 24 id. 261; *Bravord Case*, 115 Ind. 1, 5; *Thomas Case*, 121 N. Y. 45; *People* v. *S. R. Co.*, Id. 582, 583.) The claim of a waiver of the forfeiture on the part of the state is frivolous. (*People* v. *P. Bank*, 24 Wend. 431; *State* v. *M. C. R. Co.*, 36 Minn. 247.) The Statute of Limitations is not a bar to the action. (Laws of 1867, chap. 775, § 1; *People* v. *B. R. Co.*, 36 N. Y. S. R. 376, 383, 384.) The act of 1889 (Chap. 236) has no application to this case, because the ground of forfeiture or cause of action existed or had accrued, and the action itself had been commenced and was pending when the act was passed. And the subsequent proceeding instituted before the board of railroad commissioners is, therefore, without pretense of authority and void. (*McMaster Case*, 103 N. Y. 547, 554; *People* v. *Supervisors*, 43 id. 103, 134; *In re Van Kleeck*, 121 id. 701; *People ex rel. Wade* v. *Strack*, 3 T. & C. 165; Endlich on Statutes,

§ 273 ; *Sayre* v. *Wisner,* 8 Wend. 661 ; *Quackenbush* v. *Danks,* 1 Denio, 128 ; *Dash* v. *Van Kleeck,* 7 Johns. 478.) The act of 1889 is in manifest violation of the Constitution. (*People* v. *McDonald,* 99 N. Y. 480 ; *State* v. *Noble,* 118 Ind. 350–354; Cooley's Const. Lim. [4th ed.] 109, 115 ; *Alexander* v. *Bennett,* 60 N. Y. 204 ; *Anderson* v. *Reilly,* 66 id. 189 ; *Dash* v. *Van Kleeck,* 7 Johns. 498 ; Cooley's Const. Lim. 116 ; *Flint Case,* 25 Mich. 99 ; *Allor Case,* 43 id. 76 ; *Gough* v. *Dorsey,* 27 Wis. 119 ; *Atty.-Gen.* v. *McDonald,* 3 id. 805 ; *Gregory* v. *State,* 94 Ind. 384 ; *Little* v. *State,* 90 id. 338 ; *Schoultz* v. *McPheeters,* 79 id. 373 ; *Wright* v. *Defrees,* 8 id. 298 ; *Waldo* v. *Wallace,* 12 id. 569 ; *Boord Case,* 65 id. 427 ; *Barto* v. *Himrod,* 8 N. Y. 483 ; *People* v. *P. Bank,* 24 Wend. 430 ; *People* v. *Stephens,* 71 N. Y. 527.)

*George Zabriskie* for respondent. This action is brought to enforce a penalty, and cannot be maintained upon any right or claim of the town of Harpersfield based upon its having been bonded under chapter 648 of the Laws of 1866 to aid in the construction of the road of the Rondout and Oswego Railroad Company, or on any other claim of that town. (*People* v. *R. R. Co.,* 103 N. Y. 95 ; *Vatable* v. *R. R. Co.,* 96 id. 51 ; *People* v. *R., W. & O. R. R. Co.,* 103 id. 95 ; *Sullivan* v. *P. & K. R. R. Co.,* 4 Otto, 806 ; *Metz* v. *B. C. & P. R. R. Co.,* 58 N. Y. 65 ; *People* v. *L. & N. Co.,* 120 Ill. 48–57.) The claim that, under the act of 1874, the Ulster and Delaware acquired and took not only the railroad and property connected therewith which was sold under foreclosure, and the rights, privileges and franchises appurtenant thereto, but all the rights, privileges and franchises of the old company, and thereby became in law bound to exercise all those franchises, and that a failure so to do involved a forfeiture of its corporate existence, is unfounded. (*Memphis* v. *Commissioners,* 112 U. S. 609–619 ; *Lord* v. *Y. G. Co.,* 101 N. Y. 614 ; *Coe* v. *C. R. R. Co.,* 10 Ohio St. 386–390 ; *Morgan* v. *Louisiana,* 93 U. S. 217 ; Jones on R. R. Securities, §§ 15, 16.) Even if the defendant incurred any duty or obligation

to build the whole line of railroad which the Rondout and
Oswego Railroad Company was incorporated to construct,
which we deny, still, the act of 1874, chapter 430, under
which the Ulster and Delaware Railroad Company is organ-
ized, imposes no penalty upon that company for failure so to
do. (*People* v. *C. G. Trust*, 130 Ill. 268; *E. P. R. Co.* v.
*Vaughan*, 14 N. Y. 546; *O. R. Co.* v. *O. R. Co.*, 130 U. S.
25; *Jones* v. *Estis*, 2 Johns. 379; *Bell* v. *Dole*, 11 id. 173;
*Health Dep.* v. *Knoll*, 70 N. Y. 530; *F. A. Bank* v. *Colgate*,
120 id. 381; *Ferrett* v. *Atwill*, 1 Blatchf. 151; *Simpson* v.
*Pond*, 2 Curt. 502; *United States* v. *Sheldon*, 2 Wheat. 119.)
The defendant never incurred any duty or obligation to con-
struct a road between Stamford and Oneonta. (Laws of 1874,
chap. 430; *Johnson* v. *N. Y. C. R. R. Co.*, 49 N. Y. 455;
*People* v. *A. & V. R. R. Co.*, 24 id. 261; *People* v. *R., W.
& O. R. R. Co.*, 103 id. 95; *People* v. *O'Brien*, 111 id. 1;
*People ex rel.* v. *Cook*, 110 id. 443; *Metz* v. *B., C. & P. R.
R. Co.*, 58 id. 61; *Vatable* v. *N. Y., L. E. & W. R. R. Co.*,
96 id. 54–59; Jones on R. R. Securities, §§ 15, 16, 632; 2
Rorer on Railroads, 920; *Atkinson* v. *M. & C. R. R. Co.*, 15
Ohio St. 21; *Vilas* v. *M., etc., R. R. Co.*, 17 Wis. 497; *People*
v. *L. & N. Co.*, 120 Ill. 48–57.) The act of 1874 is a reme-
dial statute, and is to be liberally construed in favor of the
defendant. (*People* v. *N. Y. C. & H. R. R. R. Co.*, 28 Hun,
543; *People* v. *B. Co.*, 89 N. Y. 85; *People* v. *O'Brien*, 111
id. 1; *G. Co.* v. *Cowdry*, 11 Wall. 459; *U. S.* v. *N. O. R. R.
Co.*, 12 id. 362; *Smith* v. *People*, 47 N. Y. 330; *People* v.
*Stephens*, 71 id. 528, 537.) The right of the people to insti-
tute an action to annul the existence of any of the companies,
including the respondent, is barred by the Statue of Limita-
tions, which requires such actions to be brought within two
years after the cause of the action accrues. (Code Civ. Pro.
§§ 384, 389; *In re B., etc., R. R. Co.*, 72 N. Y. 245; *B. S.
T. Co.* v. *City of Brooklyn*, 78 id. 525; *Jones* v. *Estis*, 2
Johns. 379; *Bell* v. *Dole*, 11 id. 173; *Health Dep.* v.
*Knoll*, 70 N. Y. 530; Code Civ. Pro. § 384; *Butler* v.
*Johnson*, 111 N. Y. 204.) The act of 1889 is applicable

to this action. (*People* v. *Livingston*, 6 Wend. 526; *Butler* v. *Palmer*, 1 Hill, 324; *U. I. Co.* v. *Bliss*, 4 Biss. 327; *People* v. *Stephens*, 71 N. Y. 527; *People* v. *Spicer*, 99 id. 225; *R. R. Co.* v. *Grant*, 98 U. S. 398; *Ins. Co.* v. *Ritchie*, 5 Wall. 541.) The act of 1889 does not seek to interfere with the exercise of the judicial power of the courts or the legislative power of the legislature, or to transfer any judicial or legislative power to the railroad commissioners; and if it did it would not be invalid. (*People* v. *Turner*, 117 N. Y. 227; *Embury* v. *Connor*, 3 id. 511; *Vose* v. *Cockroft*, 44 id. 415; *Houston* v. *Wheeler*, 52 id. 641; *Miller* v. *Mayor*, etc., 113 U. S. 385; *In re N. Y. E. R. R. Co.*, 70 N. Y. 327, 343; *In re G. E. R. R. Co.*, Id. 361, 374; *Howard* v. *Moot*, 64 id. 262; *Martin* v. *Mott*, 12 Wheat. 19; *U. S.* v. *Ferreira*, 13 How. [U. S.] 40; *Murray* v. *H. L. & I. Co.*, 18 id. 272; *Cole* v. *State*, 102 N. Y. 48; *O'Hara* v. *State*, 112 id. 146; *Sipple* v. *State*, 16 Abb. [N. C.] 430.) The act of 1874 is repealed by the act of 1889 as far as it ever constituted a basis for this action. (Code Civ. Pro. § 1798; *U. S.* v. *Tynen*, 11 Wall. 88; *Norris* v. *Crocker*, 13 How. [U. S.] 429; *Dash* v. *Van Kleeck*, 7 Johns. 477; *People* v. *G. & S. T. Co.*, 98 N. Y. 67, 78; *Lyday* v. *Long Island City*, 104 id. 218; *People ex rel.* v. *Bull*, 46 id. 57, 68; *Ex parte McCardle*, 7 Wall. 506–514; *Ins. Co.* v. *Ritchie*, 5 id. 541; *R. R. Co.* v. *Grant*, 98 U. S. 398; *People* v. *Jaehne*, 103 N. Y. 182; Laws of 1869, chap. 917; *Butler* v. *Palmer*, 1 Hill, 324; Cooley on Const. Lim. [4th ed.] 476, 477; *Nash* v. *White's Bank*, 105 N. Y. 243; *Hughson* v. *Rochester*, 49 Hun, 45; *Yeaton* v. *U. S.*, 5 Cranch, 281; *Schooner Rachel* v. *U. S.*, 6 id. 329; *U. I. Co.* v. *Pierce*, 4 Biss. 327.) The court should not render judgment against the defendant which necessarily determines that an act of the legislature, passed for the very purpose of relieving the defendant from this doubtful claim, is invalid or inoperative, and plaintiffs must make out a very clear case to warrant the court in refusing to give effect to an act of the legislature on such grounds. (*Thompson* v. *People*, 23 Wend. 536; *People* v. *W. T. & B. Co.*, 47 N. Y. 586.)

*George Zabriskie* for appellant on appeal from order. The question whether an action should be regarded as difficult and extraordinary within the meaning of the Code of Civil Procedure, rests substantially in the judgment and discretion of the judge to whom the application for an additional allowance is made, and the determination of the question involves so many considerations addressed to the discretion of the judge that the appellate court rarely interferes. The court does not encourage appeals upon mere matters of discretion. (*R. R. Co.* v. *Davis*, 55 N. Y. 145; *Bryon* v. *Durrie*, 6 Abb. [N. C.] 140; *Morrison* v. *Agate*, 20 Hun, 23; *Tolman* v. *R. R. Co.*, 31 id. 397; *Gooding* v. *Brown*, 35 id. 153.) There is nothing in the nature of the action which excludes the application of section 3253 of Code, or prevents the granting of an extra allowance if the facts warrant it. (*People* v. *A. & V. R. R. Co.*, 16 Abb. Pr. 465; *Conaughty* v. *S. C. Bank*, 92 N. Y. 401, 305; *Lattimer* v. *Livermore*, 72 id. 174; *Monroe* v. *Smith*, 23 Abb. [N. C.] 275; *Struthers* v. *Pearce*, 51 N. Y. 357.) The value of the subject-matter involved is both the value of the corporate franchise and the value of the property, because both are involved. (Code Civ. Pro. § 3253.) The allowance is to be computed upon the value of the corporate franchise. (*Conaughty* v. *S. C. Bank*, 92 N. Y. 401; *People* v. *H. Ins. Co.*, Id. 328; *Fanning* v. *Osborne*, 102 id. 441; *People* v. *B., etc., R. R. Co.*, 89 id. 75; *People ex rel.* v. *Cook*, 110 id. 443; *Warren* v. *Buckley*, 2 Abb. [N. C.] 323; *People* v. *Ferry Co.*, 7 Hun, 105; *Lattimer* v. *Livermore*, 72 N. Y. 174; *Monroe* v. *Smith*, 23 Abb. [N. C.] 275; *Burke* v. *Candee*, 63 Barb. 552.) The assessed valuation of defendant's corporate franchise for taxation is competent evidence, as between the people and the defendant, of its value as a basis for an extra allowance. (Laws of 1881, chap. 361; *People* v. *H. Ins. Co.*, 92 N. Y. 328; *C. T. Co.* v. *N. Y. C. & N. R. Co.*, 110 id. 250; *Swift* v. *Poughkeepsie*, 37 id. 511, 514; *Barhyte* v. *Shepherd*, 35 id. 238; *B. & S. L. R. R. Co.* v. *Suprs.*, 48 id. 93; *People* v. *W. S. Bank*, 39 Hun, 525; *O. Bank* v. *Bunnell*, 10 Wend. 186; *Foster* v. *Van Wyck*, 37 N. Y. 512;

*Chegaray* v. *Jenkins*, 1 Seld. 376; *Woolsey* v. *Morris*, 96 N. Y. 311.) Ample evidence to prove the value of defendant's corporate property was furnished. (*Fanning* v. *Osborne*, 102 N. Y. 441; *People* v. *B.*, etc., *R. R. Co.*, 89 id. 75.) If the case be one in which an extra allowance may be awarded, and there be no valid legal objection to the granting of an allowance, the appellate court will not interfere except where there has been a gross abuse of power on the part of the court below. (*Tollman* v. *R. R. Co.*, 31 Hun, 397; *Gooding* v. *Brown*, 35 id. 153; *Comins* v. *Suprs.*, 3 T. & C. 296; 64 N. Y. 626; *Everingham* v. *Vanderbilt*, 12 Hun, 75.)

*E. Countryman* for respondents, on appeal from order. It is apparent that the word "*involved*" (in the statute) is used in a legal sense and means the possession, ownership or title to property or other valuable thing which is to be determined by the result of the action. It does not mean the property which may be either directly or remotely affected by the result. (*Conaughty Case*, 92 N. Y. 404.) The General Term having refused, in the exercise of its legitimate discretion, to grant an allowance, the order is not appealable to this court. (*Schiels* v. *Wortman*, 37 N. Y. S. R. 134.)

Ruger, Ch. J. This action was brought in the name of the people by the attorney-general to determine the corporate existence of the defendant, upon the alleged ground that it had forfeited its charter through a failure to build a portion of the railroad track which its predecessor was authorized to construct. The Rondout and Oswego Railroad Company was organized in 1866, under the General Railroad Act, to build, operate and maintain a railroad from Rondout, in Ulster county, to the village of Oneonta, in the county of Otsego; and, during the period of its existence, actually built a road from Rondout to Stamford, but failed to build that portion extending from Stamford to Oneonta. The defendant, the Ulster and Delaware Railroad Company, through a plan of reorganization adopted by the bondholders under chapter 430

.of the Laws of 1874, on the sale of the property of the railroad under a mortgage foreclosure in 1875, succeeded to the rights, property and franchises of the original company. It was for the failure of the defendant to complete the railroad originally projected by the Rondout and Oswego Company that this action was brought. The action is claimed to have been authorized by the provisions of section 1798 of the Code of Civil Procedure, providing that an action may, by leave of court, be brought by the attorney-general· to procure a judgment annulling the existence of a corporation created under the laws of this state when, among other things, it "has violated any provision of law whereby it has forfeited its charter, or become liable to be dissolved by the abuse of its powers, or forfeited its privileges or franchises by a failure to exercise its powers."

A violation of the provisions of this section apparently creates a cause of forfeiture and contemplates a punishment to be inflicted upon the offender, and not a benefit to be recovered by the prosecutor. No absolute right to enforce a forfeiture· for the causes specified is conferred upon any party, but it is made to depend upon certain conditions. The statute does not execute itself, but requires the action of the attorney-general· to make it effective. Even the willful neglect of a railroad· corporation to exercise all its franchises does not, of itself, terminate its corporate existence; but, to effect that result, the state, through its attorney-general, must not only elect to enforce the forfeitures, but also procure leave from the court to bring an action for that purpose. (Code of Civil Procedure, § 1798; *People* v. *A. & V. R. R. Co.*, 24 N. Y. 261; *People* v. *N. R. Sugar Refining Co.*, 121 id. 582.)

Such actions are not even then maintainable, except some public interest is involved which requires the exercise of the franchise by the corporation. (*People* v. *N. R. Sugar Refining Co.*, *supra*.)

It was, therefore, incumbent upon the state to show upon the trial of the action that a cause of forfeiture had not only been incurred by the defendant, but that it continued to exist,

and that its existence involved some public interest, and also that the court had authorized the bringing of the action. An action thus commenced is, even then, necessarily always within the control of the state, as the sole party interested, to prose-cute or abandon at its mere will and pleasure. (*People* v. *Phœnix Bank*, 24 Wend. 431.)

It is responsible to no one for the exercise of its discretion in this respect, and can, through the action of its legislature, not only discontinue an action brought by it, but can also repeal or confirm charters; waive or abolish causes of for-feiture; release rights of action, and limit the operation of its statutes upon individuals and corporations at its own will. By enforcing the forfeiture of corporate existence, the state receives no benefit and acquires no property, and by waiving such forfeiture it loses no privilege and interferes with no vested right. Having the absolute power at will to take the corporate life, it does not hamper its freedom of action by for-bidding its servants in specified cases from prosecuting actions for forfeiture. It requires no exercise of judicial power to enable it to waive a forfeiture, but it may be effectuated by the mere expression of its will, and its will may be based upon cause or utterly without one. Having absolute power as the supreme representative of the people in respect to the question, it may do so with or without cause, or upon whatever terms or conditions it may see fit to impose.

It is claimed by the defendant that the state, by the enact-ment of chapter 236 of the Laws of 1889, amending chapter 430 of the Laws of 1874, has so changed the original statute that a reorganized railroad corporation no longer incurs the risk of forfeiting its charter, when the railroad commissioners certify that no public interest is involved in the completion of a road as originally projected.

The act is as follows: "Nothing herein contained shall be construed to compel a corporation organized under this act to extend its road beyond the portion thereof constructed at the time said corporation acquired title to such railroad property and franchise, provided the board of railroad commissioners

shall certify that, in their opinion, the public interests, under all the circumstances, do not require such extension. If said board shall so certify and shall file in their office such certificate, * * * said corporation shall not be deemed to have incurred any obligation so to extend its road, and such certificate shall be a bar to any proceedings to compel it to make such extension, or to annul its existence for failure so to do, and shall be final and conclusive in all courts and proceedings whatever."

By this enactment the state has indicated in the most imperative form its will in respect to such actions. It thereby declared that the certificate of the railroad commissioners to the effect that no public interests were involved should thereafter be a conclusive answer to any attempt to annul the existence of a reorganized railroad corporation for a failure to make an extension of its road. By this act the state devolved upon the railroad commissioners the duty, previously performed by its attorney-general, of inquiring whether the public interests required it to enforce an alleged forfeiture against a reorganized railroad corporation, and necessarily thereby deprived other departments of the government of the power of determining the preliminary question upon which the action of the state in instituting and prosecuting such actions must be founded.

By leaving to another department of the state the determination of a question upon which its own action was thereafter to be controlled, it neither delegated legislative power to, or conferred judicial functions upon, such department. It simply instituted an *ex parte* inquiry to determine its own future action as had been the uniform practice of the state government for many previous years. The question whether the public interests are involved is always a condition precedent to the right of maintaining any action by the attorney-general for the forfeiture of corporate rights, and the state by this act says that it will hereafter leave this question in certain cases to the railroad commissioners to determine, instead of to the attorney-general by whom it had theretofore been decided.

In other words, it has made the railroad commissioners' certificate conclusive evidence of the non-existence of any sufficient ground of forfeiture. After the filing of such certificate the law prescribing a forfeiture of its charter by a reorganized railroad company for an omission to build an extension of its road, ceases to operate thereon and practically abolishes the penalty which the act of 1874 imposed in certain cases. This does not give to the act a retroactive operation; but there being no clause in the act of 1889 saving pending prosecutions or existing rights from the effect of the statute, by settled rules the abolition of the penalties left all actions in which judgments had not been obtained subject to the rule created by the amended statute alone. (*Nash* v. *White's Bank of Buffalo*, 105 N. Y. 243.)

We are of the opinion, therefore, that the certificate of the railroad commissioners filed under the act of 1889, to the effect that no public interest required the extension of the defendant's railroad, was a bar to this action.

We are also of the opinion that the order denying the motion for an extra allowance was correctly determined. By section 3253 of the Code of Civil Procedure, the court is authorized in difficult and extraordinary cases, where a defense has been interposed, to award to any party a sum not exceeding five per centum upon the sum recovered or claimed, or the value of the subject-matter involved. It is conceded that the matter involved in the action was the existence of the defendant's corporate franchise, and that alone, and a claim for an extra allowance must, therefore, be predicated upon the value of the franchise. The trial court awarded an allowance of fifteen hundred dollars to the defendant, and must, therefore, have determined that the corporate franchise was at least of the value of thirty thousand dollars. The undisputed evidence showed that the corporation paid no dividends on its stock, and no interest on its debts, and that its gross earnings were insufficient to pay its operating expenses in the year 1889. This evidence certainly did not show affirmatively that the corporate franchise had any definite value.

It is, however, claimed that because the state imposed a tax upon "the corporate franchise and business" of the company, under chapter 361 of the Laws of 1881, some evidence was furnished by the state of the value of the franchise. We are of the opinion that this tax furnished no evidence of the fact upon which a claim to an additional allowance can be based.

The act provides that in the case of non-dividend-paying railroads, a tax shall be imposed upon their corporate franchise and business at the rate of "one and one-half mills upon each dollar of a valuation of the capital stock." This value is usually estimated by the comptroller from data furnished by the officers of the company, and in the year 1889, upon a capital stock of $1,152,100, was estimated to be of the value of $41,602.50, yielding a tax of about sixty dollars per annum. It is thus apparent that the sum assessed under this provision is an arbitrary amount based upon the amount of its capital stock, without reference to the value of its franchise. A tax upon the corporate franchise and business of a railroad is also authorized by the same act to be computed upon its gross earnings at the rate of five-tenths of one per cent upon each dollar of such earnings.

It will thus be seen that both these taxes are imposed arbitrarily, upon certain data having no reference to the actual value of the franchise, and, therefore, furnish no evidence of such value. While the act of 1889 apparently assumes that the franchises and business of all railroads subject to taxation are of some value, it would be quite erroneous to make so vague and indefinite an assumption the basis of a judicial inquiry as to the actual value of a railroad franchise.

The judgment and order appealed from should both be affirmed, with costs.

All concur.

Judgment and order affirmed.