WURSTER et al. v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, Kings County. December, 1908.)

1. MANDAMUS (§ 131*)—PERFORMANCE OF CORPORATE ACTS.

The proper method to compel a corporation to perform a duty imposed upon it by charter is mandamus, and not a suit in equity.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 265; Dec. Dig. § 131.*]

2. FERRIES (§ 28*) — FORECLOSURE OF FERRY PROPERTY—REFUSAL TO OPERATE—INJUNCTION.

The purchasers at a foreclosure sale of an insolvent lessee of certain ferries cannot be compelled by injunction to operate said ferries against their will, where it is not shown that they were under any duty to the public so to do.

[Ed. Note.—For other cases, see Ferries, Dec. Dig. § 28.*]

Action by Frederick W. Wurster and others against the City of New York and others. On motion for preliminary injunction. Denied.

Nathaniel A. Elsbury, for the motion.

Henry M. Earle, Louis H. Hablo, and William H. Blymyer (Rush Taggart, of counsel), opposed.

BLACKMAR, J. This is a motion for an injunction to restrain the city of New York, the New York Terminal Company, and William O. Madden from discontinuing or suffering to be discontinued five ferries running between the boroughs of Manhattan and Brooklyn. These ferries were established by the city of New York under powers conferred upon it by ancient charters, and have for many years been operated by the city, through its lessee, the Brooklyn Ferry Company of New York. Since the opening of the Brooklyn and Williamsburg bridges the returns from the ferries have fallen off materially, so that they have been operated at a loss, and default has been made in the payment of rentals by the operating company to the city. On account of these losses, default was made in the payment of the interest on the bonded indebtedness of the operating company, an action was brought to foreclose the mortgage securing such indebtedness,

a decree of foreclosure and sale was obtained, and on July 24, 1908, the property covered by the mortgage, to wit, the Brooklyn termini of said ferries and the boats and the equipment, was sold at public auction to the defendant, the New York Terminal Company. The property so sold included the rights of the lessee, if any, under the leases which had then expired, but did not include the lease of the Forty-Second Street ferry, which was then in force. The New York Terminal Company immediately leased the property to the defendant William O. Madden, who continued the operation of the ferries, and who on July 29th posted a notice of intention to permanently discontinue them on July 31st. Before that date this action was brought, and a preliminary injunction granted restraining the said defendants from discontinuing the ferries, and ordering and directing them to maintain and operate the same.

A motion for a peremptory mandamus to compel the city of New York to operate the ferries was also made at the same time, and both motions were argued together. In deciding the motion for a mandamus, I reached the conclusion that the five ferries in question were established by the city of New York under powers granted by the Montgomerie charter of 1730; that by the terms of such charter a special, perpetual, and exclusive franchise was conveyed to the city of each of these five ferries as separately established, and that the city holds such franchises on the same terms as if each ferry had been the subject of a specific grant; that the grant and acceptance of the franchise imposed upon the city a corresponding duty of operation for the public benefit, but that such duty is limited by the extent of the powers granted to the city in respect to the method of operation, whether directly or through lessees; that the power to operate the same directly and to acquire land and property therefor by eminent domain or purchase rests in the discretion of the city, acting through certain of its commissioners; that the duty of offering a lease of the ferries at public auction, so that they may be operated through lessees, is an absolute duty resting upon the city, providing the ferries are not operated through some of the other prescribed methods; and that such duty can be enforced by mandamus. The decision directed a writ of mandamus to issue, commanding the proper officers of the city to offer a lease of the ferries at public auction in the manner prescribed by the charter, unless some other method of operation should be adopted.

In so far as the plaintiff in this case seeks an injunction directed against the city of New York, the question is the same as that presented upon the motion for a mandamus. The injunction sought against the city is mandatory in its nature, and the practical result of granting it would be to enforce the performance of an affirmative act. The proper method to compel a corporation to perform a duty imposed upon it by its charter is mandamus, and not a suit in equity. People v. Albany & Ver. R. R., 24 N. Y. 261, 82 Am. Dec. 295. Neither is a taxpayer's action an appropriate remedy. Such an action is available to prevent any illegal official act on the part of the officers of a municipality, or to prevent waste or injury to its property; but it cannot be resorted to for the purpose of compelling the city to exercise its

corporate functions. Balch v. City of Utica, 42 App. Div. 567, 59 N. Y. Supp. 516.

This motion differs from the motion for a mandamus in that it seeks to prevent the other defendants, the New York Terminal Company and William O. Madden, from discontinuing the operation of the ferries. As to these defendants, although the prayer for relief is phrased in the negative, this is in effect an action to secure a mandatory injunction compelling them to operate and maintain certain ferries. Whatever may be said of the power of the courts to compel the grantee of a ferry franchise to operate and maintain a ferry, a judgment or order to that effect must be based upon some duty of operation which rests upon the defendant. The plaintiff must, therefore, establish that the defendants, the New York Terminal Company and William O. Madden, are under a duty to the public to maintain and operate these ferries. This duty must grow out of some interest which they have in the ferry franchise, or out of some contractual relation with some person through whom the plaintiff claims. It is true that a lessee operating the ferries under contract with the city is, as to the public at large, performing a function of the city in carrying out a purpose imposed upon it by its charter. Such lessee may be said to receive under the lease an interest in the franchise, and such interest creates a corresponding duty of operation. The duty of operation imposed upon the lessee by the lease from the city is not merely a contractual duty, which can be enforced only by the city, but is a duty to the public of the same nature as that owed by the city, limited in its extent and duration by the terms of the lease. City of Brooklyn v. Brooklyn R. R., 47 N. Y. 475, 7 Am. Rep. 469.

But neither of the defendants, the New York Terminal Company nor William O. Madden, is a lessee of the city. They have no right to operate these ferries against the will of the city. The sovereign has conferred on the city the exclusive right to establish and keep ferries all around the island of Manhattan to the opposite shores. No person can operate such ferry without the consent of the city, and it does not appear that the city has given such consent to either of the defendants. Mayor v. Starin, 106 N. Y. 1, 12 N. E. 631. Both these defendants are merely volunteers. They appeared at the foreclosure sale and purchased the land, boats, and equipment of the insolvent lessee and its rights, if any, under the expired leases. I do not find that they acquired at such sale any right to operate these ferries. They acquired no interest in the franchise owned by the city, and I am unable to see how they assumed any duty to the public with respect to the use of the property so purchased by them. It is not shown that they came into possession of any land or other property which was devoted to a public use.

There is nothing in the record showing how or under what circumstances the lessee acquired the Brooklyn termini, nor by what title it held it. The title of the New York Terminal Company is the same as that of the mortgagor lessee, and there is nothing in the record to show that the public, as such, has any right in this property, or that it is devoted to a public use. I am unable to find any principle upon

which the court can constrain these defendants to continue in the business of operating a ferry against their will.

The motion for an injunction is denied, and the preliminary injunction vacated, with costs.