CHARLES A. BROWN *v*. ALFRED W. CARTER, ALFRED W. CARTER, Trustee for Irene Ii Holloway, George Ii Brown and Francis Hyde Brown, IRENE II HOLLOWAY, GEORGE II BROWN, an infant, FRANCIS HYDE BROWN, an infant, and THE JOHN II ESTATE, Limited, a corporation.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED APRIL 24, 1903. DECIDED DECEMBER 12, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

Notice of a corporation meeting should be reasonable in the absence of a special provision as to what notice should be given.

A stockholder who attends and takes part in a meeting without objecting to the shortness of the notice cannot afterwards question the validity of the meeting on that ground.

Stock may be voted by proxy though its owner is present and voting other stock held in trust.

An objection raised by a woman that she was a married woman when she became one of the five persons who formed a corporation, her then husband being another of the five, cannot avail when raised collaterally and for the purpose of avoiding a part only of the articles of association.

When a husband and wife jointly conveyed their property to a trustee to convey it to a corporation when formed on certain terms, and the corporation was formed and the property was conveyed, and stock was issued to the husband, wife and their (minor) children respectively, certain of the provisions contained in the articles of association in accordance with the terms of the trust deed, and which are claimed to be harsh or improvident cannot be avoided on the ground that a married woman could not through a trust deed authorize a trustee to enter into such terms as against herself and the minors.

*Semble,* a corporation may bind itself in the articles of association to retain one of its members as its treasurer and manager so long as he owns not less than one-fourth of the stock, (and by implication so long as he properly performs the duties of those offices) subject to removal or alteration of the articles only by a vote of three-fourths of all the stock, notwithstanding a general statutory power to make by-laws for the management of its property, the election and removal of its officers, &c.

Assuming that such a provision in the articles would be binding, it does not necessarily follow that equity would specifically enforce it by injunction, and, when, as in this instance, certain by-laws have been adopted, the enforcement of which against the plaintiff, it is contended, would violate such provision in the articles, but when such by-laws are reasonable except as against any rights that may have become vested, and no attempt has been made to enforce them as against the plaintiff, and many nice questions of law are involved as to the construction of the articles and by-laws, equity will refuse to go through them for the purpose of determining just how far the corporation and the plaintiff may go in various directions under hypothetical conditions and enforcing its construction by injunction, especially in view of its reluctance to interfere with the management of corporations or to grant injunctions except in clear cases or to specifically enforce hard contracts.

### OPINION OF THE COURT BY FREAR, C.J.

This is a bill to enjoin the defendants from acting under or enforcing certain by-laws of the defendant corporation and from acting in conflict with certain rights, powers and duties claimed to have been conferred on the plaintiff by the articles of association of the said corporation. The Circuit Judge overruled general demurrers filed by the respective defendants and after a

hearing upon their answers found for the plaintiff and granted the injunction. The defendants appealed.

The principal facts are these: The plaintiff and the defendant Irene Ii Holloway (*nee* Irene Ii) were formerly husband and wife and the defendants George Ii Brown and Francis Hyde Brown are their children. The plaintiff claims to have become entitled under former laws, for the term of his said wife's life and during the minority of their said children, to the custody, use and usufruct, rents, issues and profits of all property of a fixed and immovable nature belonging to his said wife before her marriage to him or accruing to her thereafter during such marriage. On July 2, 1897, as a preliminary step towards forming the defendant corporation, the plaintiff and his said wife joined in a conveyance of said property to one Henry Holmes in trust to convey the same to the said corporation when formed in accordance with the terms of the said conveyance. The corporation was formed July 9, 1897, the articles of association containing most of the said terms, and the property was conveyed to it by the trustee. The 1500 shares of stock of the corporation of the par value of $100 each, were issued, 499 to the plaintiff, 499 to Henry Holmes as trustee for the two children, 499 to Henry Holmes as trustee for the wife, 1 to J. A. Magoon, 1 to Henry Holmes and 1 to S. M. Ballou. The 998 shares issued to Henry Holmes as trustee were afterwards transferred to the defendant A. W. Carter as trustee for the same beneficiaries and the one share issued to S. M. Ballou was assigned to said A. W. Carter. On September 9, 1902, at a meeing of the stockholders called by said Carter, who was president of the corporation, certain by-laws were adopted. The plaintiff's contention is that certain of these by-laws are invalid as being inconsistent with certain rights claimed by him under the articles of association.

The provisions in the articles to which special attention is called are the following: No extension of the capital stock "shall be made except upon a vote of the shareholders of the company holding not less than three-fourths of all the shares of the company. * * * * * The officers other than the Auditor shall be the Directors of the company. The officers of the com-

pany shall be as follows: Henry Holmes, President; J. A. Magoon, 1st Vice President; Irene Ii Brown, 2nd Vice President; C. A. Brown, Treasurer and Manager, and S. M. Ballou, Secretary . The Auditor shall be appointed at the first meeting of the shareholders after the incorporation. The officers and directors shall continue to hold office for one year and thereafter until their successors are appointed. The officers of the company other than the auditor shall be appointed by the shareholders representing not less than three-fourths of all the shares of the company. The auditor need not be a shareholder of the company. He shall not be appointed by shareholders representing a majority of all shares of the company. * * * Said corporation shall have power * * * to buy, sell, lease, mortgage, exchange and otherwise manage any real and personal estate * * * but no real estate belonging to the company shall be mortgaged, conveyed or sold except by a vote of the majority of the directors of the company. * * * To make by-laws not inconsistent with these articles for the management of the property, election and removal of its officers, and the regulation of its affairs and transfer of its stock as the business of the corporation shall from time to time require. * * * The treasurer and manager if and while he shall be a shareholder of the company holding not less than one-fourth of all the shares of the company shall have the sole and exclusive charge, care and control of all the real and personal property of the company, all moneys that shall be due, owing or payable to the company shall be receivable by him and all moneys that shall be due, owing or payable by the company shall be disbursed by him and he shall perform such other duties as generally attach to the offices of treasurer and manager. Any limitation on the above powers shall be made only by a vote of the shareholders of the company holding not less than three-fourths of all the shares of the company."

The provisions of the by-laws that are claimed to be invalid and inconsistent with the articles are as follows:

"Article 4.

"Officers.

"Sec. 1. The officers of the corporation shall all be residents of the Territory of Hawaii, and shall consist of six persons, to wit: A President, a First Vice-President, a Second Vice-President, a Treasurer and Manager, a Secretary, and an Auditor.

"Sec. 2. No officer shall absent himself or herself from the Territory of Hawaii for a period of more than three weeks at any one time without the consent of the stockholders holding at least a majority of all the shares of the company. Any officer violating this section shall be subject to removal from office by the stockholders holding at least a majority of all the shares of the company.

"Sec. 3. In case of the violation by any officer of Section 2 of this Article the stockholders holding at least a majority of all the shares of the company shall have the right at a meeting of the company duly called for that purpose to declare vacant the office held by such officer and to appoint another person to hold such office.

"Sec. 4. If any officer shall absent himself from the Territory of Hawaii for a period of not more than three weeks at any one time, or shall absent himself from the Territory of Hawaii for a period of more than three weeks with the consent of the stockholders holding at least a majority of all the shares of the company, the stockholders holding not less than a majority of all the shares of the company shall thereupon at a meeting called for that purpose appoint some other person to perform until the return of such officer all the duties of such office.

"Sec. 5. No officer shall delegate the duties of his office to any other person.

"Article 5.

"Election.

"Sec. 1. The officers shall be elected at each annual meeting or at any special meeting duly called· for that purpose, and a vote of not less than three fourths of all the shares of the corporation shall be required to elect an officer, other than the auditor, except as otherwise provided by Article 4. * * * *

"Article 7.

"Sec. 1. The company shall have a Board of Directors which shall consist of all the officers other than the Auditor,

and the Board shall have the management, direction and control of all the business of the corporation under its Articles of Association and these By-Laws.  *  *  *

"Article 8.

"Treasurer and Manager.

"Sec. 4.    (a)    The Treasurer and Manager shall perform all duties usually appertaining to the office of Treasurer and Manager and such other duties as are imposed upon him by the Articles of Association and these By-Laws.  He shall, however, in all affairs of importance, consult and be guided by the advice of a majority of the Board of Directors.

(b)    The Treasurer and Manager shall give a bond to the Company with two sureties approved by the Board of Directors for the faithful performance of his duties and the delivery to the Company of the property in his care and custody upon his resignation, removal or termination of office in a sum to be fixed by the Board of Directors."  *  *  *

"Article 11.

"In case of any violation by any officer of these By-Laws the stockholders holding at least a majority of all the shares of the Company shall have the right at a meeting called for the purpose to expel such officer from such office as a punishment for such violation, and to elect some other person to fill said office."

Several minor contentions on each side will be disposed of first.    On behalf of the plaintiff it is urged that none of the by-laws can stand for the reason that the notice of the meeting at which they were adopted was unreasonably short.    There was no provision whatever prescribing what notice of meetings should be given.    There were previously no by-laws at all.    In the absence of a definite provision the notice should be reasonable.    It seems that on several occasions during the three weeks preceding the meeting, Mr. Carter, the President, told Mr. Magoon, who apparently was supposed to represent Mr. Brown also, that by-laws were being prepared and that he expected to call a meeting soon for their consideration.    Mr. Magoon told this to Mr. Brown.    The absence first of Mr. Brown and then of Mr. Carter prevented calling a meeting earlier.    About one hour's notice was finally given.    All the stockholders were

present.    Messrs. Magoon and Brown protested against the
adoption of the proposed by-laws on the ground, among others,
that they ought not to be railroaded through, that no oppor-
tunity had been given to examine them, and that they should
first be referred to a committee to report upon them at a future
meeting.    Mr. Carter then proposed that they be taken up
section by section or that there be an adjournment for a few
days so as to give ample time to examine them.    Messrs. Ma-
goon and Brown apparently did not care for an adjournment
unless for such time as would enable Mr. Brown to first take a
trip to California.    The by-laws were then passed, Messrs Car-
ter as trustee, representing 998 shares, and A. A. Wilder by
proxy for Mr. Carter, representing one share, voting in the
affirmative, and Messrs. Brown and Magoon, representing 499
shares and 1 share respectively, voting in the negative.    The
share obtained by Mr. Carter from Mr. Ballou, not having been
transferred on the books, was not voted.    Assuming that the
notice was unreasonably short, it seems to us that the plaintiff
must be taken to have waived the defect by attending and taking
part in the meeting and voting on the question of the by-laws
without any specific objection to the shortness of the notice.
He objected to the adoption of the by-laws on the ground that
he had not been given an opportunity to examine them before
the meeting but did not object to the shortness of the notice
of the meeting.

Another contention for the plaintiff is that Mr. Wilder could
not vote by proxy for Mr. Carter when the latter was present
and that the latter could not split up his stock so as to vote a
part himself and have another part voted by proxy.    The pres-
ence of the owner of the stock would not prevent its being voted
by proxy.    Under the statute, members may "vote either in
person or by proxy."    C. L., Sec. 2012.    And, even if one
could not vote part of his stock in person and part by proxy
when held in the same right, he might, as was the case here,
vote in person stock held in one capacity, that is, as trustee,
and by proxy stock held in another capacity, that is, in his own
right.

On behalf of the defendants it is contended that the corporation was not legally formed because one of the five persons who signed the articles of association, as required by the statute, was incompetent because she was a married woman. Assuming that a woman married before the Married Woman's Act of 1888 was passed could not thus enter into contract with her husband and others, still the defendants cannot be allowed to set this up now. The then wife has long been divorced from the plaintiff and even now does not seek to repudiate the act of incorporation *in toto*. She merely seeks to avoid the burdensome features while attempting to hold to those that are advantageous. Further, a defect of the kind relied on cannot be raised collaterally as it is now raised.

Another contention for the defendants is that, looking upon the provisions of the articles now in question as part of a contract between the corporators, it is invalid because the trustee to whom the property was first conveyed in trust could not be authorized by a married woman, one of the grantors, to enter into such a contract on behalf of the married woman and minor children. We see no reason why the husband and wife could not join in a trust deed to a third party or why such third party could not then carry out the trust. He could not very well carry it out in part, in so far as it was favorable to the wife and children, and not as to what was unfavorable to them. In so far as the children were concerned, what they got was in the nature of a gift and no objection can be based on their incapacity.

We now come to the main questions—that of the validity of certain of the by-laws in view of the special provisions of the articles of association and that of the appropriate remedy. These are not easy questions and there is upon them very little authority of a satisfactory nature.

It is urged in support of the by-laws, first, that they are not inconsistent with the articles and, secondly, that, if they are inconsistent with the articles, they are nevertheless authorized by the statute, which, of course, prevails over the articles.

The company was incorporated under the general corporation law by filing articles of association and an affidavit setting

forth certain facts as required by the statute, whereupon by the provisions of the statute it became a corporation with the powers granted to corporations by law. C. L., Ch. 128. No doubt the articles must be construed strictly and the corporators could not confer upon themselves powers in addition to those granted by law by inserting them in the articles. *Oregon R. & Nav. Co. v. Oregonian R. Co., Ltd.,* 130 U. S. 1; *City of Danville v. Danville W. Co.,* 178 Ill. 299. And a by-law may be valid if authorized by statute though inconsistent with the articles or charter. *Booz's Appeal,* 109 Pa. St. 392. Moreover the statute expressly provides that "every corporation .created, or to be created in this Territory shall have power: * * * 6th, to make by-laws not inconsistent with any existing law, for the management of its property, the election and removal of its officers, the regulation of its affairs, and the transfer of its stock." And in the absence of the statutory provision a corporation aggregate may make by-laws as an inherent or incidental power.

But what is the conclusion from all this? Does it follow that all provisions in the articles other than those required by the statute are null and void, or that a corporation can make by-laws without restriction except as found in the statute? The statute, while it requires the articles to contain certain particulars, does not say that it shall not contain others, and others are constantly inserted in practice, whether properly or not. Should not such provisions avail so long as no attempt is made by the corporators to take upon themselves powers not authorized by law? The articles are the fundamental agreement among the corporators and between them and the corporation as well as in the nature of a charter of powers from the Territory. Why should not provisions contained therein other than those required by law but not inconsistent with law have force as parts of a contract between the corporators and even between the corporation and its members though not necessarily between the Territory and the corporation? And why should not the corporators be permitted to contract as they please so long as they

do not attempt to violate the law or public policy or interfere with vested rights?

There is much difference of opinion as to what by-laws a corporation may preclude itself from making or what circumstances do preclude it from making or enforcing particular by-laws and what not? See Boisot, By-laws, Secs. 118-130, and cases there cited. A by-law may stand under certain circumstances or for certain purposes and not under other circumstances or for other purposes. For instance, if under the by-laws of a mutual benefit society a member is entitled to certain benefits upon becoming ill, and the by-laws are amendable, even those courts which hold that the by-laws may be amended after a member becomes ill, so as to reduce his benefits thereafter—on the theory that the liability to amendment is part of the original contract entered into voluntarily by the member—also hold that the amendment cannot affect benefits already accrued, which have become a debt to him from the corporation. His vested rights cannot be impaired by the exercise of the power to amend, though he agreed upon becoming a member that the by-laws might be amended. So, if the legislature has reserved the power to amend a charter, even those courts which hold that an amendment in a material respect authorized by the legislature might be accepted by the corporation, that is, by a majority of its stock, and against the will of the minority, notwithstanding the original agreement of incorporation for certain named purposes—on the theory that the liability to amendment is part of the original contract entered into voluntarily by all the members—also hold that an obligation entered into by the corporation prior to such amendment cannot be impaired thereby. See *Pain v. Soc. St. J. Baptiste,* 172 Mass. 319; *Durfee v. Old Colony, &c., Co.,* 5 Allen 230; *Lloyd v. Supr. Lodge,* 98 Fed. 66; *Pepe v. City, &c., Soc.,* (1893) 2 Ch. 311; *Smith v. Galloway,* (1898) 1 Q. B. 71. So, although, a corporation may make by-laws with respect to the election or appointment and removal of its officers, it may enter into a contract to engage one to serve it for a fixed period so as to deprive itself of the power by a by-law or otherwise to remove

such officer during such period except for cause. And it is even intimated that it may do so in the face of a statutory, charter or by-law provision existing at the time to the effect that officers may be removed at any time. See *Douglass v. M. Ins. Co.,* 118 N. Y. 484, and cases there cited, and, *contra, Trustee v. Strong, Hopk.* (N. Y.) 278; *Darrah v. Wheeling I. & S. Co.,* 4 S. E. (W. Va) 373. Again, when it is said that a corporation may make, alter or repeal by-laws, it is meant that the holders of a majority of the stock represented at a duly called meeting may act, and yet might it not be provided in the articles or by-laws themselves that the latter should not be added to, amended or repealed except upon notice given at a previous meeting or except by a majority of all the stock in the corporation or by two-thirds or three-fourths of all the stock represented at a meeting or two-thirds or three-fourths of all the stock in the corporation? This is constantly done without question as to its propriety or validity. Such by-laws seem reasonable and the corporation may make reasonable by-laws. And the corporation may often, especially by unanimous consent, bind themselves by contract where they alone as distinguished from the state, are concerned, regulating the manner in which they shall exercise the powers conferred by statute. See *Kent v. Quicksilver M. Co.,* 78 N. Y. 159, 185. If the corporators should agree not to make, alter or repeal by-laws except by a three-fourths vote, the corporation could still exercise its statutory power to make by-laws. It would merely act by a three-fourths instead of a majority vote. Indeed, in making such a by-law it might be regarded as acting in the exercise of this very power to make by-laws. And is not this power given primarily for the benefit of the corporators and cannot they renounce it in so far as it is for them and their action does not affect the rights of others, and is not contrary to the public good? C. L., Sec. 7. What is a reasonable by-law depends largely on the circumstances. The by-laws in question, we presume, would be reasonable under ordinary circumstances and they may be reasonable now as to some of the officers of the corporation, but are all of them reasonable as respects the plaintiff

in view of the original contract entered into by all the corporators in the articles of association?

The corporators may bind themselves by contract in the articles or outside the articles as well as in what they may prefer to call by-laws, as to their methods of dealing with officers. Under certain circumstances it is immaterial whether they call an instrument articles, charter, constitution, contract or by-laws. See *Supreme Lodge v. Knight,* 117 Ind. 489, 495. In the present case the agreement relied on by the plaintiff was part of the fundamental agreement of the corporators. It was embodied in the preliminary deed to the trustee, to whom the plaintiff conveyed his property on the express understanding that he was to be secured the rights he now claims or some of them. It was also embodied in the articles of association—by the unanimous consent of the original stockholders. It related to matters that were within the scope of the powers of the corporation and its members—the appointment of its officers and the management of its property. No doubt the agreement was one that it would ordinarily be unwise to make and one that ought not to be favored. It was perhaps a hard exaction on the part of the plaintiff, but apparently he was unwilling to surrender his rights in the property except upon that condition, and if the contract was lawful it cannot be impaired or violated with impunity merely because the defendants find the provisions vexatious. There is a great difference between a fundamental agreement entered into by all at the outset specifying the conditions under which alone the parties consent to embark and a mere by-law made subsequently by a majority vote. A case like the present in certain respects in *Loewenthal v. Rubber R. Co.,* 52 N. J. Eq. 440. That was a bill to restrain a change in the certificate of organization and by-laws, which a majority of the stockholders proposed to make. Such change was expressly authorized by statute to be made by such majority— apparently in the exercise by the legislature of its reserved power over corporations. The corporation had been formed by the union of five companies engaged in the same class of business. They at the outset unanimously adopted a by-law

authorizing cumulative voting and providing for amendments, additions and repeals only by a two-thirds vote of the whole capital stock.  The object was to secure to each of the five combining companies representation on the board of directors of the new corporation.  The court held that the by-laws were part of the fundamental agreement and could not be altered except in the manner therein provided or by the consent of all the stockholders.  The present case is perhaps a stronger case than that in some respects, though weaker in other respects, for in that there was a question of the exercise of the reserved power of the legislature, while here there is no attempt to exercise any power of alteration expressly reserved either by the legislature or by the corporation, and so we need not enter into the controversy referred to in that case, the two sides of which are so well championed by the Massachusetts and New Jersey courts respectively.  The former in *Durfee v. Old Colony &c. Co., supra,* held that when the legislature reserved the power of alteration, the corporation, that is, a majority, could accept an alteration against the wishes of the minority, on the theory that the power to alter was part of the contract into which all entered and that an alteration made by one party, the legislature, could be accepted by the other party, the corporation, which, of course, acts by a majority, to all which the New Jersey court replied (in *Zabriskie v. Hackensack & N. Y. R. Co.,* 18 N. J., Eq. 178) that in so far as an alteration could be made at all by mutual consent of both parties it could be made without any reservation of power, and in so far as it could be made at all by virtue of the reserved power of one party it could be made by that party alone without the consent of the other. See 2 Cook, Corp. Sec. 501; 1 S1. & M., Corp., Sec. 57.  It may be that the Legislature in the exercise of its reserved power may impose additional duties and powers upon a corporation without its consent within certain limits, and make the acceptance of the amendment a condition of the continued exercise of corporate powers by the corporation, especially in respect to matters that concern the state, but that a mere grant of additional powers cannot be accepted except by unanimous consent

·of the stockholders when it is without the scope of their original ·contract with each other. Some members cannot of their own will alone retreat from an original contract into which they have entered voluntarily with all the others, nor can a corporation at pleasure annul a contract into which it has entered with its members. The mere power to make by-laws, though ·conferred upon the corporation by the legislature at the outset, did not deprive it of the right to make certain contracts or by-laws within the scope of its powers, so as to bind it. And, as we have seen, it is expressly provided by statute that "individuals may, in all cases in which it is not expressly or impliedly prohibited, renounce what the law has established in their favor, when such renunciation does not affect the rights of others, and is not contrary to the public good." C. L., Sec. 7.

Assuming, then, that the articles of association are valid and binding, and that the by-laws are, in part at least, inconsistent with the contract contained in the articles, between the corporation and the plaintiff, and that the corporation cannot with impunity violate it, does it follow that the corporation may not remove the plaintiff from his office or that an injunction should be granted against the enforcement as to him of the by-laws in question? One party to a contract cannot impose new terms ·on the other in the absence of a reserved power to do so. But the contract in this case is not to keep the plaintiff as its treasurer and manager, &c., &c., under all circumstances. He has ·duties to perform as well as privileges to enjoy. Ordinarily, if an employee violates his contract, the employer is absolved from his obligation and may discharge him, and even when a discharge is made without cause, equity as a rule does not interfere but leaves the complaining party to his remedy at law. And so it is said that corporations may discharge officers for ·cause and even without cause subject to liability for damages —even when their terms of office are fixed. See 3 Cl. & M., ·Corp., Secs. 664, 666; 2 Cook, Corp. Sec. 624; 1 Thom., Corp., Sec. 802; and cases there cited. *In re Griffing Iron Co.,* 63 N. J. L. 168, 357. If the corporation or its ·members could bind itself by contract to retain the plaintiff in office whether

he was unable or unwilling to perform its duties or not, it would tend to defeat the very purposes for which the corporation was formed. But it has not attempted to do that. It has at most agreed to retain him under certain conditions in a certain office—which carries by implication the obligation on his part to properly perform the duties of that office and the liability to removal when he ceases to do so. There is much in the books upon the questions of the manner and causes of removal of officers and employees by corporations or their directors and the appropriate remedy—whether by action for damages, suit for specific performance, mandamus, *quo warranto,* injunction or otherwise, in case of unlawful removal and many distinctions are drawn. How far a court of equity should interfere in a case of this kind by injunction is perhaps not altogether clear. In *Imperial Hydropathic Hotel Co. v. Hampton,* L. R. 23 Ch. D. 1, the corporation attempted to remove two directors and elect two new directors in their places. An injunction was asked, not by the old directors to prevent such action, but by the corporation to prevent the removed directors from acting as directors. It was held that the power to remove directors was not inherent, that the contract between the members fixing the terms of the directors could not be varied, that in order to remove the directors the corporation would have to first exercise its reserved power to alter the articles of association, and that, as it had not done that, the attempt to remove the directors was futile and the injunction was refused. In *Eley v. Positive Assurance Co.,* L. R. 1 Ex. D. 20, it was provided in the articles that a certain person should be solicitor for the company, removable only for misconduct. He brought an action for damages for breach of contract after the company ceased to employ him. It was held that there was no contract with the corporation, inasmuch as, for one reason, the solicitor was not an original party to the articles, though apparently he acquired stock afterwards, but the improvidence of a contract by which the corporation would be tied to a person for his life was commented upon, even when it expressly provided for a removal for misconduct, and yet the court was hardly prepared to say

that it would be *ultra vires*. In *Browne v. La Trinidad,* L. R. 37 Ch. D. 1, the plaintiff had entered into an agreement with one acting as trustee for a company to be formed, by which the plaintiff was to convey certain property to the company for shares in the company and was to be a director for a little over four years at least. He did not subscribe to the memorandum of association. The agreement was adopted by the articles and the plaintiff was made a director. Afterwards a meeting was called to remove him before the expiration of the time specified in the agreement. He asked for an injunction to prevent his removal. The articles expressly provided for the removal of any director by special resolution before the expiration of his term. It was queried on the one hand whether in view of the contract, if there was one, an injunction ought not to issue, notwithstanding the provision for removal in the articles, and on the other hand whether the court ought to interfere by injunction to specifically enforce an agreement that the plaintiff should be an irremovable director, but it was held that there was no contract between the company and the plaintiff because he was not a party to the articles. In *Bainbridge v. Smith,* L. R. 41 Ch. D. 462, the owners of certain property conveyed it to a trustee for a corporation to be formed, one of the terms being that the plaintiff's father and, in case of his death or retirement, the plaintiff, should be managing director for ten years. This contract was adopted in the articles. Afterwards, the father having died, an attempt was made by the other directors to exclude the plaintiff as a managing director, and the latter asked for an injunction to prevent such exclusion. The main question in the lower court was whether the plaintiff had a required qualification of holding a certain amount of stock in his own right, and, that having been found in his favor, an injunction was granted against the remaining directors, who, of course, had no power to remove one of the directors, but the appellate court suspended judgment so as to give the stockholders an opportunity to indicate by vote at a meeting called for the purpose whether they desired the plaintiff to act as a managing director in case he were qualified, and, upon their passing a resolution that they

did not, the injunction was dissolved. There does not appear to have been any provision in the articles permitting the removal of any managing director except for disqualification or for cause. The court apparently based its action in not granting an injunction, on the ground that "it would be contrary to the principles on which this court acts to grant specific performance of this contract by compelling this company to take this gentleman as managing director, although he was qualified so to act, when they do not desire him to act as such."

Thus, assuming that the contract between the plaintiff and the corporation or the plaintiff and the other members, contained in the articles, is valid as far as it goes, we must hold at least that the plaintiff is subject to removal, and that, too, without liability on the part of the corporation to damages for breach of contract, in case he proves unwilling or unable to perform the duties of his office as required on his part by the contract itself, and that equity should not compel the corporation by injunction to retain in office one who will not or cannot perform its duties. To do otherwise would be not only to permit but to compel the corporation to disable itself from fulfilling the purposes for which it was created, to enforce a contract against one party and allow it to be violated by the other and to aid one who comes into equity with unclean hands. How far equity should interfere to see that the corporation, if it should attempt to remove the plaintiff from his office, acts in a legal manner, how far it should go in interfering with the findings of fact or final decision of the stockholders in case they should act in a lawful manner or how far it should go in saying to what extent the terms of the original trust deed may be considered as incorporated in the articles or how far they are binding on the corporation in so far as they are or are not incorporated in the articles, are questions that it seems premature to decide at present. The by-laws have been adopted. No injunction is asked against their adoption. No objection is made to the provisions of many of them. Some at least to which objections are made as to the plaintiff are not objected to as to others. All seem reasonable except in so far as they may interfere with vested rights. The

corporation has not attempted to enforce any of them against the plaintiff. It is not clear that it will. If it shall attempt to remove the plaintiff, it is not clear on what grounds it will attempt to do so, or how far it will rely on the by-laws in making such attempt. There are many nice questions of law involved as to the construction of the articles and by-laws, many of which have not been argued, in addition to the many possible variations in conditions of fact. The plaintiff practically asks the court to go through the articles and by-laws and construe them with reference to various hypothetical states of fact and declare how far he and the corporation may go under them in various directions. It will be time to decide specific questions when they arise. Equity should not attempt to delineate the paths which the plaintiff and the corporation may take or the limits to which they may go or attempt to control them by injunction at this stage,—especially considering how reluctant equity is to interfere with the management of corporations or even to grant injunctions at all except in clear cases or to specifically enforce hard contracts.

The decree appealed from is reversed and the case remanded to the Circuit Judge with directions to dismiss the bill and for any other proceedings not inconsistent with this opinion.

*Hatch & Silliman, J. A. Magoon and T. I. Dillon* for plaintiff.

*Robertson & Wilder* for defendants other than the Guardian *ad litem.*

*A. S. Hartwell* for Guardian *ad litem.*