## TERRITORY OF HAWAII, BY CHARLES R. HEMEN-WAY, ATTORNEY GENERAL OF THE TERRI-TORY OF HAWAII, *v.* HONOLULU RAPID TRAN-SIT & LAND COMPANY, A CORPORATION.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED JANUARY 6, 1908.     DECIDED JANUARY 20, 1908.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

INJUNCTION—*street railroad—threatened violation of statutory require-ment of service.*

The statute granting the defendant's franchise requiring it to maintain at all times a sufficient number of cars to be used for the carriage of passengers as public convenience may require, the circuit judge, at the suit of the attorney general, enjoined a threatened reduction of a long continued service on a particular street. Held, affirming the decree appealed from, that the duty imposed by the statute was sufficiently specific, that the evidence supported the finding that the proposed service was insufficient for public convenience, and that injunction was the proper remedy to restrain the threatened violation of statutory duty.

OPINION OF THE COURT BY HARTWELL, C.J.

This is an appeal by the defendant from a decree enjoining it from operating upon Liliha street in Honolulu cars less in number than are now operated and maintained, to wit: "One car every ten minutes both ways with exception in respect of the first car up or northerly and the last car down or southerly, when only one way." The plaintiff's bill, brought by the attorney general, avers that the defendant is operating a single track electric railway upon certain specified streets in Honolulu over lines described in the bill and designated as the Liliha-Waialae, King street, Punahou, Nuuanu street, Manoa, Alakea

street and Emma street lines, the various connecting points being set forth in the bill; that the Punahou, Nuuanu street, King street, Alakea street and Emma street lines and that portion of the Liliha-Waialae line between Wyllie and River streets are operated on a ten minute schedule and that the lines are so arranged that cars of connecting lines meet nearly simultaneously at transfer points.

The bill further avers that the portion of Liliha street over which the company operates its cars is two miles in length and runs through a densely populated portion of Honolulu; that there are about 6000 residents who use the cars along that street and other streets over which the connecting lines operate; that the convenience of the public requires that the ten minute schedule continue on Liliha street and that the defendant in violation of the rights of the public and its duties under the law and the requirements of its charter proposes to modify the Liliha-Waialae schedule so that cars will be operated over Liliha street between 9 o'clock in the morning and 4 o'clock in the afternoon and between 6 o'clock in the afternoon and 12 o'clock midnight under a twenty minute schedule; that reasonably prompt transportation facilities and making reasonably prompt transfers to connecting lines, preventing unnecessary delay in traveling over Liliha street, require that a ten minute schedule be maintained on Liliha street; that the proposed change would prevent this and cause delay at the transfer points of the Liliha-Waialae line with connecting lines, unreasonably retard transaction of business and pursuit of pleasure to the detriment and irreparable injury of the public and contrary to its rights in that behalf; that certain residents adjacent to Liliha street have complained to the attorney general and represented to him that the convenience of the public generally, and Liliha street residents in particular, requires a ten minute service upon that street and that a service of a greater interval than ten minutes between cars would be a serious inconvenience to them and to the public generally.

The defendant in its answer avers that the court has no jurisdiction of the subject matter of the suit; that the allegations in the bill set forth no ground of complaint against the defendant or for relief by injunction or otherwise or cause for the exercise of the jurisdiction of the court; that the bill does not show that the Territory authorized the suit or is a proper party; admits that in many cases its schedules are so arranged that cars of connecting lines meet nearly simultaneously at transfer points, but denies that this is the case generally or that its line over Liliha street is about two miles long, being 7,101 feet, or that it runs through a densely populated district in which are about or approximately 6000 residents; denies that the convenience of the public requires a ten minute schedule or that the proposed change would not operate to the public convenience; avers that in the endeavor to improve the service of the Liliha-Waialae line it proposed a continuous fifteen minute service from Waialae to Liliha street but after conference with certain persons representing Liliha street patrons and others representing the Waialae portion of the route and after a thorough canvas of the situation and discussion of all the facts in regard to the necessity of travel at each end and the convenience of the general public it was unanimously agreed and, at the recommendation of said persons, the defendant consented to change its plan and modify the schedule of the Liliha-Waialae line as alleged in the bill, and was proceeding to do so at the time of the service of the temporary injunction which was made upon the filing of the bill; that the proposed service is all that the exigencies of travel along the line and the accommodation of the patrons of the road demand with a view to economical operation of the system and is an ample service under all the conditions.

The circuit judge heard the cause upon the pleadings and, finding upon the evidence adduced that public convenience required the number of cars now operated along Liliha street to be continued and that a less number would be insufficient

for the requirements of public convenience, ordered a permanent injunction, as prayed for, a temporary injunction having been granted on the filing of the bill.

The defendant contends that equity has no jurisdiction but that mandamus is the only remedy to enforce a statutory obligation; that injunction does not lie to enforce action but only to prevent injury, and that the statutory provision (Sec. 870 R. L.) for forfeiture of franchise, if it fails to comply with the requirements of the statute, is the exclusive remedy, but that mandamus would not lie because no duty is imposed by law to run cars at any particular time; that the law gives the corporation discretion as to times of running its cars and that if there is any reserve power to control the discretion it is the legislature only and not the court which can exercise such power, so that until legislative action neither injunction nor mandamus lies.

The defendant claims that injunction will not lie upon the facts in the case because public convenience means the convenience of the public under all the circumstances,—such facilities as the traffic will warrant, as determined by the revenue derived therefrom, and also because the court will not usurp the legislative function and require any particular service which is shown to be unprofitable to the company, and further, because the case shows that no permission was given by the superintendent of public works to change the switches so that the proposed schedule could be carried out, the application for an injunction being therefore premature.

The defendant's brief, while contending that "no case in the highest court of any state or in the United States Supreme Court can be found to sustain the equitable jurisdiction in this case," goes on to state the rule as follows: "Our decisions are full of expressions showing that equity will not interfere with the management of corporations or grant injunctions except in clear cases and as a preventive measure against action which

is likely to cause irreparable injury," citing *Wundenberg v. Martin,* 14 Haw. 167; *Brown v. Carter,* 15 Haw. 350.

On the point that equity has no jurisdiction the defendant relies especially upon *Shackley v. Eastern R. R. Co.,* 98 Mass. 93. In that case the railroad company had become the owner of the South Reading branch railroad under a statute which required it to run daily a freight train and four passenger trains over that road "so as to furnish reasonable accommodation to the public generally and the business along the line of said road." The plaintiffs brought a petition for an order to require the respondents to comply with the statute, alleging that although public convenience and necessity required running of the freight trains, the respondents, although often requested, had refused for ten months to do so to the great and unnecessary delay, expense, inconvenience and damage of the petitioners and of the public generally in the transportation of their freight along the line of this railroad. The case was treated as a proceeding on the equity side of the court the respondents demurring, alleging as one cause of demurrer that the petition did not show that the petitioners had such an interest as entitled them to maintain it. The petitioners relied upon a statute providing that in case of disagreement as to what might be considered reasonable accommodation to the public the supreme court, upon application of any person interested. might appoint commissioners to settle the disagreement and investing the court with full equity power to enforce the provisions of the statute. The court held that the only right given by the statute was to apply to the court for appointment of commissioners to settle any disagreement as to what may be considered reasonable accommodation and that the portion of the act which invested the court with equity powers to enforce its provisions left the parties and the mode of proceeding to be regulated by the ordinary practice in chancery, and that "Any suit to compel the performance of a corporate duty in which the petitioners show no interest different from that of the whole public should be brought in the name of the Attorney General

and cannot be maintained in the name of these petitioners," and further, that "it would seem that no relief could be afforded in equity for the cause stated in the petition either at the suit of individuals or of the Attorney General representing the commonwealth; but that the only remedy would be at law by mandamus, indictment or other appropriate process or by proceedings to annul the respondents' charter or franchise," citing *Attorney General v. Birmingham Ry. Co.,* 4 DeG. & S. 30; 3 M. & G. 453; *People v. Albany & Vermont R. R. Co.,* 24 N. Y. 261.

In the former of these cases a railway company, formed in 1846 for the purpose of making a railway from A to B with diverging line to C, had in June 1851 nearly completed the line from A to B but had taken no steps to construct the diverging line. The attorney general, at the relation of certain parties claiming to be interested in the diverging line, filed an information to restrain the company from opening the line from A to B except with the intention of completing also the diverging line. It was held upon demurrer that the neglect to complete the whole line could not be regarded in the light of a public injury so as to warrant the interference of the attorney general. The court sustained the demurrer, saying, "Undoubtedly the attorney general has a right to represent the public, either in equity or in prosecution at law, in cases where the public interests are exposed to danger or mischief, and in the course of the argument several authorities were cited to show that such interference is recognized in equity; but the informations in all those cases were directed to the repression of acts which the parties had no legal right to do and which are not only not authorized to be done but were, in fact, acts of public nuisance."

In 24 N. Y. 261, the defendant, having completed its road between the termini named in its charter, had abandoned a portion. The attorney general brought suit in the name of the people for an injunction to restrain the selling, taking up

or removing of fixtures on the portion which had been abandoned and that the defendant be required to operate it for public use. The court held that the railroad act under which the company was organized, being permissive, imposed no contract obligation. The bill was therefore dismissed, four of the judges being of the opinion "that a corporation is under a legal obligation to exercise its franchises and that it has not the option to discontinue a portion of its road and forfeit its franchises," but all agreed that the remedy was not in equity for specific performance but by "mandamus, indictment, or, at the election of the people, by proceeding to annul the existence of the corporation."

It is unnecessary to comment upon these cases further than to observe that they merely illustrate the rule that equity does not act when there is adequate legal remedy, that its compulsory powers will not be exercised when mandamus will accomplish the same purpose and that in the absence of a contractual obligation to construct and operate a railroad mandamus will not lie to compel its construction and operation. The same remark applies to *Rogers Locomotive Works v. Erie Ry. Co.,* 20 N. J. Eq. 379; *Delaware, etc., Co., v. Stock-Yard Co.,* 45 N. J. Eq. 50; *New York, etc., Ry. Co., v. Montclair,* 47 N. J. Eq. 591, and to *State v. Ry. Co.,* 62 N. H. 29, cited by defendant. Nor is the plaintiff obliged to wait until the defendant shall have accomplished a violation of its charter obligation to provide a sufficient number of cars for the public convenience before bringing proceedings to prevent the loss and inconvenience which would result therefrom. The defendant argues that this is not an injunction against a positive act but against inaction, saying, "The court by a curious process of reasoning holds that an injunction, the effect of which is to compel us to run cars, is an injunction to prevent us from running cars, the difficulty in the court's mind being that what is prevented is not running." A right cannot be enforced, says the defendant, by the aid of an injunction unless in the case of a threat-

ened breach of a negative covenant where irreparable injury can be shown; but injunctions are common which, in effect, require that nothing be done to disturb existing rights or conditions. Thus injunctions are granted restraining a telephone or telegraph company from unauthorized discontinuance of its service, a customer not being required to postpone his remedy until the service is cut off. See *Chesapeake & Potomac Tel. Co. v. Manning*, 186 U. S. 238; *Smith v. Gold, etc., Tel. Co.*, 42 Hun 454.

The defendant's claim that its right to regulate the operations of its railway includes the right to determine for itself at what intervals its passenger cars shall be run is not tenable. The statute requires that it shall at all times maintain a sufficient number of cars to be used upon said railway for the carriage of passengers as public convenience may require (meaning, as we understand the statute, that the defendant actually operate and not merely, as it suggests, keep the cars in condition for using them), although "other cars designed for the carriage of mails, parcels and goods" may be such as the association "may deem necessary." Sec. 841 R. L.

Undoubtedly there are many administrative details in maintaining and operating a street railway more or less affecting its efficiency in serving the public interest which are necessarily and finally determined by the railway officials and are not within the power of equity to supervise and direct; but the defendant's claim that the furnishing of sufficient cars for public convenience on Liliha street is a matter of which it is the sole judge goes too far, for it would admit a similar claim in respect of any other street over which its line is established and include a right to run no cars on such portions of its line as it thought fit, and in some cases would amount to repudiating expressed contractual obligations imposed upon the defendant by acceptance of its charter.

Decisions upon the exercise of judicial power concerning the maintenance or operation of railroads or of branch roads

which refer to corporations authorized but not required by statute to construct and maintain railroads are not in point. *Commonwealth v. Fitchburg R. R. Co.,* 12 Gray, 180, held that statutory power to construct and maintain branch railroads did not impose a legal duty to maintain them and that it was for the corporation to judge what was necessary or reasonable "except in those cases where the legislature has expressly intervened in the first instance." It is true that the court said that public wants were "measured by the business actually done," that "if trains run at reasonable and moderate fares cannot be supported it is because they are not needed," and that it was the corporation's right as well as duty "to exercise a sound discretion in the use of its capital lest by exhausting it upon trains that were not required by the public wants it should deprive itself of the means of running at reasonable rates those that were." So *State v. Helena P. & L. Co.,* 22 Mont. 391. *Ohio & Mississippi Ry. Co., v. People,* 120 Ill. 200, held that mandamus will not lie to compel the company to increase the number of its trains over a branch road, the company having no funds with which to do so its running expenses having exceeded its earnings over $400,000 from the time of its purchase. The court spoke of the duty of the defendant to afford adequate facilities "to be judged of and governed chiefly by the amount of business," and that although as a general rule courts will not interfere with the management of a railway in determining questions relating to the operation of its road, except where the act sought to be enforced is specific, held that the ordinary incentives of self interest and to avoid the common law liability of a common carrier had not attained the desired end in that case and that quo warranto and not mandamus was the proper remedy in order that the company should be deprived of its franchise and another company could be formed to show whether under proper management it could be self sustaining, for if this could not be shown then there was no demand for the road and the sooner the state revoked

the franchise the better. Mandamus was denied, however, because the statute did not require an increased number of trains. Of course where reasonable facilities are already furnished there is no occasion for judicial action. Thus *Chicago & Eastern Ill. R. R. Co., v. People,* 222 Ill. 398, refused mandamus to compel the location of a station at another point than the company had designated on the ground that the evidence failed to show that the proposed station would not afford "reasonably safe, accessible, and convenient conditions for the public." The same view was taken by the United States supreme court in *Atlantic Coast Line R. R. Co., v. Horton, et al.,* 207 U. S. —, as reported in advance sheets. The supreme court of South Carolina had granted a mandamus to compel the railroad company to stop two of its through trains from Jersey City to Tampa at a station called Latta, pursuant to an order of the railroad commissioners. Latta had a population of 453, having several local trains for stations along the road and one through Pullman train which stopped there. The only objection to the trains was their want of speed. The court thought that the company had furnished such reasonable accommodations to the people at Latta as it could fairly and properly be called upon to give.

It is urged that "a bill in chancery would not lie to enforce the specific performance of duties requiring continuous personal labor and care." *McCann v. South Nashville R. R. Co.,* 2 Tenn. Ch. 773; and that an injunction does not lie to enforce a contract requiring continuous acts. The injunction in this case merely precludes the violation of an obligation imposed by the defendant's charter.

As to the defendant's claim that it does not appear that irreparable injury would result, it is enough that the proposed act would be a violation of the statutory obligation of the defendant. *Attorney General v. R. R. Companies,* 35 Wis. 425.

We do not sustain the defendant's contention that the suit is premature pending the result of its application to the superin-

tendent of public works for permission to change its switches to conform to the proposed 10-20 minute service. The statute, Sec. 843 R. L., provides that the company "shall make reasonable and just regulations, with the consent and approval of the governor, regarding the maintenance and operation of said railway on and through said streets," and failing to do so "the superintendent of public works with the approval of the governor may make them." This does not appear to us to be a grant to the association or to the executive of discretionary power to determine how many cars shall be run and at what intervals. A separate section, 841, provides that the company "shall at all times maintain a sufficient number of cars." A grant either to the company or to the executive of such an important power as to determine how many cars are required for this purpose would naturally and properly be expressed or clearly implied. Its exercise would not call for any public hearing but ordinarily would be ex parte on the company's showing. A matter so important to the public is subject to judicial inquiry and determination unless, as is not the case here, shown in clear language to be entrusted to executive discretion or to the discretion of the corporation.

Many cases are cited by the defendant holding that "mandamus to compel a railroad to do a particular act can be issued only when by statute there is a specific legal duty on its part to do that act." *Northern Pacific R. R. Co., v. Dustin,* 142 U. S. 492; *People v. Brooklyn Heights Ry. Co.,* 172 N. Y. 90; *Nashville Ry. v. State,* 155 Ala. 401; *State v. Patterson, etc., Ry. Co.,* 47 N. J. 505; *San Antonio Street Ry. v. State,* 90 Tex. 520; *State v. Kansas City Ry. Co.,* 25 So. 127 (La.); *Florida Central Ry. Co., v. State,* 18 So. 103, (Fla.); *Raymond v. County of Stearns,* 18 Minn. 40.

*Attorney General v. Salem,* 103 Mass. 138, was an information in the nature of quo warranto alleging that under a statute for supplying the city of Salem with water the defendant had constructed works at the expense of $1,000,000 or more and

issued scrip or bonds to that amount, the statute providing that the city council should establish water rates to provide for payment of interest and not less than one per cent. annually on the principal of the loan, and that the net income should be set apart as a sinking fund for its payment; further alleging that the city, disregarding these provisions, had established nominal water rates leaving property and poll taxes to pay the interest, etc., and praying that it be made to answer by what warrant it was acting thus and be enjoined from supplying water at nominal rates and taxing inhabitants to pay the operating expenses and the loan. The court held that this was not the appropriate remedy to enforce performance of duties imposed by law or to restrain improper use of a franchise which does not work a forfeiture, declining to decide whether the attorney general could bring a bill in equity to redress any public wrong but holding that this was not a public wrong. *Attorney General v. Tudor Ice Co.*, 104 Mass. 239, was an information in equity by the attorney general to restrain the defendant from carrying on any other than its ice business. The court held that as the defendant was a private trading corporation and as public rights were not endangered injunction did not lie, saying that the only cases in which it had sustained informations in equity by the attorney general were those of public nuisance affecting the public safety or convenience and requiring immediate judicial interposition, like obstructions of highways or navigable waters and trusts for charitable purposes where a breach of the trust could not be effectively redressed except by suit in behalf of the public.

The present case is not that of a threatened public nuisance but it affects the public and therefore requires immediate judicial interposition provided the prescribed duty is sufficiently specific. The statute does not specify how many cars shall be required to be run in order to satisfy the public convenience, and therefore the objection to a writ of mandamus that the need of a stated number could not be judicially determined might

have considerable force if it were not that a definite and clear standard of public convenience in this regard has been established by the defendant corporation in its maintenance, since it began operations or for about six years, of a ten minute schedule upon Liliha street. Public convenience requires, as shown by the evidence and as would be clear in the nature of the thing, that the proposed diminution of service upon that street shall not be made. While it might be difficult to say in advance what number of cars would be sufficient, owing to the vagueness of the terms "sufficient" and "public convenience," there is nothing uncertain concerning the actual inconvenience of a reduction of the Liliha street service or in the public convenience requiring its continuance in order to conform with the time schedule on the connecting lines in the city of Honolulu.

No one pretends that the public can require for its convenience a more frequent service over the defendant's railway system than the defendant corporation can afford or that public demand, as shown by the use of the cars, is not a material factor in determining what service will suffice for public convenience, but there is no evidence that the ten minute service heretofore given on Liliha street has not paid at least operating expenses or that the continuance of that service would preclude the company from paying dividends. Liliha street is not a branch railroad. It is one of the streets of Honolulu upon which the defendant established originally its railway system. The defendant is not entitled to reduce the service upon any one street in its system to the inconvenience of the public simply because it has not made profit from the receipts from that one street. A railroad company may be required by the state railroad commission to make reasonable connections with other roads so as to promote the convenience of the traveling public by running an additional train for that purpose although the running of said train, taken by itself, would be unprofitable. "This is so because as the primal duty of a carrier is to furnish adequate facilities for the public, that duty may well be com-

pelled although by doing so as an incident some pecuniary loss from rendering such service may result." *Atlantic Coast Line v. N. Car. Corp. Com'n.,* 206 U. S. 26. The defendant therefore is not deprived of its property without due compensation. Whether, as suggested by the circuit judge, a demand for more frequent car service over that portion of the line between Kaimuki, on the Waialae road, and the junction can be enforced by mandamus because those who desire more cars there are now insufficiently supplied is a question not before us, but we see no occasion for the defendant's suggestion that the decision of the court below "is a bid to the people of Waialae to ask for a ten minute service throughout the entire day at the expense of the revenue of the company, and if it is to be sustained the principle is established that every cent of the revenue derived from transportation shall go back to transportation without returning one cent on the capital contributed by the stockholders, much less any income on their investment."

As to the defendant's contention that the Liliha street line did not pay, the figures offered in support of this view were not convincing and hardly rebut the presumption, if any there be, arising from the continued use for about six years of the line. As operated at present only one car every twenty minutes on the Liliha street line goes through the heart of the city, alternate cars connecting with King street stopping at the next switch beyond, so that practically all passengers transfer to and from the King street cars. Thus a great majority of passengers returning from the heart of the city pay their first fare on the King street line and get a transfer, none of which receipts are credited, in the statement given, to the Liliha street line; whereas if the Liliha street car ran a few blocks further through the business section of the city almost all of this would appear as receipts from this line. The defendant's method of apportioning operating expenses, if attempting anything more than a rough approximation, is also open to criticism so that altogether the corporation, placed on the defensive by its own conduct of

its business for many years, fails to rebut the case of the plaintiff.

Difficult as it might be to determine upon evidence the precise number of cars which should be maintained by the defendant or how public convenience may require them to be used upon the railway in order to discharge the statutory obligation imposed by Sec. 841 R. L., the court should not be deterred from undertaking this task by the argument that if the time schedule were reduced by imperceptible degrees it would be impossible to draw the line as to where public convenience began and ended. Undoubtedly there is a considerable margin within which the discretion of the directors of the corporation could not be disturbed, but the court must take each case as it finds it and decide whether the existing facts or whether, as in this case, the proposed action of the company fulfils the requirement of the statute. The method of disposing of a case like this is well illustrated in the opinion of the court in *Atlantic Coast Line R. R. Co., v. Horton,* supra.

In such an inquiry the express wishes of the patrons of the road are far from conclusive as it may be assumed beforehand that they would be unanimous in wanting all they think they can get. A case supported only by such evidence would have to be particularly strong to warrant the interposition of a court.

In the case at bar, however, there are surrounding circumstances which support the contention of the witnesses on behalf of the plaintiff. The fact that a ten minute service has been maintained upon Liliha street ever since the defendant's railway started, and that there has been no decrease but a steady increase in the population of the district served with a definite prospect of further increase, presents a strong prime facie showing of the measure of public convenience. The fact that the remainder of the defendant's system, except two outlying districts, is based on a ten minute service is also a circumstance tending to show the inconvenience of either a fifteen minute. or twenty minute service upon this street.

In addition to the claim of the unprofitableness of the Liliha street line, to which we have referred, the defendant presented at the hearing two reasons to meet this prima facie case. All of these appear inadequate. The first reason is that increase in business upon the Waialae section at the other end of the city justifies an increase in the number of cars on that line which it was proposed to secure by cutting down the Liliha street schedule and running through cars. It is manifest, however, that whatever may be the claims of the residents of Waialae the people served by the Liliha street line should not be made to suffer at the cost of a decrease in their service. The second reason given was that making connections with Liliha street cars often disorganized the King street line, which, being the main trunk line, threw the whole system into confusion. The evidence does not clearly sustain this claim, and, moreover, this is a distinct question from the number of cars to be operated on Liliha street; the reasonableness of making a King street car wait at the connecting point for a Liliha street car in case the latter is late is an independent question which is not before us.

Taking the case in any aspect the judge's finding was fully sustained by evidence.

It appears to us that none of the cases cited by the defendant and none of which we are otherwise informed would, under the circumstances of this case, justify a refusal of the injunction.

Decree appealed from affirmed.

*E. C. Peters* (*C. R. Hemenway,* Attorney General, with him on the brief) for the Territory.

*D. L. Withington* (*Castle & Withington* on the brief) for defendant.